## ILLINOIS CENTRAL RAILROAD COMPANY

### *v.*

## MARIA B. JEWELL, Admr'x, etc.

1. NEGLIGENCE—*principal not liable for injuries sustained by his servant, caused by his own negligence.* A railroad company will not be held liable for injuries sustained by one of its servants, in the course of his employment, when such injuries resulted from his own neglect to perform a duty, the performance of which might have avoided the accident.

2. So where a brakeman was thrown from a car and killed, it being alleged the accident was caused by a defect in the brake, the nut which kept the wheel in its place on the upright shaft having become loose, and in the effort to work the brake, the wheel came off, and the deceased was thrown to the ground: *Held,* it was the duty of the brakeman to see that the brake was in fit condition for use, and the company was not to suffer for his neglect of duty.

3. SAME—*liability for injury to one employee from the incompetency of another.* But if it appear that the brakeman was thrown from the train, by reason of the great oscillation produced by the sudden application of the brake, while the train was running at a high rate of speed, on a down grade, on approaching a station,—the wheel giving away in his attempt to apply the brake, and he was precipitated to the ground, and killed,—the incompetency of the engine-driver, as a wild, reckless runner, being known to the company, it is *held,* the company would be liable for the injury resulting therefrom.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The opinion states the case.

Messrs. McALLISTER, JEWETT & JACKSON and Mr. B. C. COOK, for the appellants.

Mr. JOHN LYLE KING, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action on the case brought by Maria B. Jewell, as administratrix of William B. Jewell, in the Circuit Court of

Cook county, against the Illinois Central Railroad Company, to recover damages for the death of her son, the intestate, on the allegation of negligence in the company in permitting the use of a defective brake on the car in which the deceased was employed as a brakeman, and on the further allegation, of the employment of an incompetent engineer.

There was much evidence on these points, and the jury found a verdict for the plaintiff. The court rendered a judgment on the verdict, a motion for a new trial having been overruled.

To reverse this judgment, the defendants bring the record here by appeal, and assign various errors, questioning the correctness of the instructions given for the plaintiff, and the refusal to give instructions asked by the defendants, and in modifying those given in their behalf. They also urge the refusal of the court to grant a new trial as error.

The theory of the plaintiff below was, that the accident was caused by a defect in the brake, the nut which kept the wheel in its place on the upright shaft having become loose, and in the effort to work the brake, the wheel came off and the deceased was thrown to the ground. The fact that the brakeman was found dead on the track, with the wheel or brake-head near him, and the brake-head of the car on which he was employed being gone, gives support to this view.

We are not inclined to hold that this was such negligence as to charge the company, for the condition of the brake was a matter under the special care of the brakeman, and it was his business, at all times, to see that it was in a fit condition for use, and report defects to the company. The company are not to suffer for his negligence of a plain duty.

On the other ground, that the company employed an incompetent engine-driver, the evidence is conclusive on that point, that Chapman was incompetent, and known to be so, by the company. Booth, who seemed to know him well, said, as a driver, "he was a very reckless man, a wild, *harum scarum* fellow; was a reckless, wild runner; he would'nt

hear to anybody;" and Hay says "he got to drinking too much."

. Shepard says he was headstrong and reckless—inattentive to his watch and time card, and he considered it necessary to watch him; another witness, Peabody, says he was not competent—rather reckless, and inclined to fast running. To have such a man in charge of the lives and property of the people, is an act of negligence for which the company employing him, and who are bound to know the qualifications of their employees, ought to be responsible.

But it is asked, how did this incompetency of the driver tend to produce the casualty, for if he was incompetent, and the accident and death were not caused by that, the company should not be charged?

This is reasonable, and it is found in the fact, that with a freight train of eighteen to twenty-five cars, on a down grade, the rate of speed was from twenty-five to thirty miles an hour, when it should not have been half that rate. It is the experience of all travelers on railroads, that the sudden application of the brakes to a train at such a high rate of speed, always produces great oscillation of the train, and would so disturb a brakeman tugging at the wheel as to throw him off, if the wheel gave way; there would be no help for him. If the speed of this train had been moderated on approaching the down grade, it would have reached the station by its own momentum without any steam, and no necessity would have presented itself for this straining at the brake.

It is said, this driver presented good recommendations when he was employed. This is all very well; but it is almost impossible that the active agents of the company should not have known of his subsequent recklessness, and his inclination to drink. Why should not railroad companies, for their own sakes, if not for the public, institute and keep up inquisitorial examinations, periodically, among the engine-drivers they employ, and among other employees, so that the unfit may

be condemned and discharged, and thus afford some protection to the countless lives and unnumbered property committed daily to their care? Public safety requires the greatest precautionary measures to be taken by these companies, who have so many dangerous machines in their use and control, that they shall not leave destruction of life and property in their path, as they sweep in their terrific power over our State. That this casualty was caused by the recklessness and incompetency of this engine-driver, we have no doubt, and the jury have so found.

We have examined the instructions, and perceive no error in them that could have misled the jury, and they embody the law as we understand it.

*Judgment affirmed.*