# The Chicago & Northwestern Railway Company

*v.*

# Frank Jackson.

1. ALLEGATIONS AND PROOFS—*variance.* In an action against a railroad company to recover for injuries received by the plaintiff by reason of the alleged negligence of the company, it was averred in the declaration that the accident happened while the plaintiff was acting as a brakeman on a freight train of defendants, while the proof showed he was acting as a brakeman in switching cars at a station, in making up a freight train: *Held,* there was no variance in respect to the character of the train.

2. NEGLIGENCE IN RAILROADS—*relative duties of the companies and their servants.* It is the duty of railroad companies to furnish to their employees safe materials and structures to be used by the latter in the performance of their duties; and although the machinery employed upon a railroad may be furnished through the servants of the company, yet that fact will not relieve the company from their liability to other employees, in different departments, who may receive injuries by reason of defective machinery.

3. So where a brakeman upon a freight train was injured in descending a ladder on one of the cars, in obedience to a signal from the engineer, the injury being occasioned by the absence of some rounds from the ladder, it was *held,* the brakeman should not be prejudiced as to his right of recovery against the company, by the negligence of those servants of the company having charge of the inspection and repair of their cars, as they were superior to him in authority, and notice to them of the defect was notice to the company.

4. It is also the duty of the servants of the company to see that machinery used by them in the performance of their duties is in fit condition for use, and to report defects to the company; but this is subject to the qualification that the servant so using the machinery has knowledge of its defects, or, by reasonable precaution, might have such knowledge.

5. So if a brakeman on a freight train receives injuries in attempting to descend a ladder on one of the cars, on account of the absence of some rounds from the ladder, should it appear that the car having the defective ladder had been used while he was brakeman on the train of which it was a part, he would be presumed to know of its condition, and required to govern his conduct, in the use of the ladder, in reference to such defect. But whether the brakeman would be chargeable with such knowledge of the defect as to impair his right of recovery for the injuries, is a matter for the jury to determine from all the circumstances in proof.

6. EXCESSIVE DAMAGES. In such a case the brakeman, in attempting to descend the ladder while the train was in motion, in obedience to a signal from the engineer, lost his hold by reason of the defect mentioned, and fell to the ground, the wheels of the cars passing over his legs and crushing them so that amputation became necessary, a verdict of $18,000 recovered by the brakeman was regarded so excessive that it should be set aside.

7. In such an action against the company, the plaintiff is entitled to compensation, not to vindictive damages, as corporations are not liable to more than compensatory damages, unless the injury is wanton or willful.

8. Although the plaintiff was almost unfitted for business by reason of his injuries, yet the company should not have been required to render to him a sum which would produce a greater income than he could have earned had he not been injured.

APPEAL from the Circuit Court of Kane county; the Hon. SILVANUS WILCOX, Judge, presiding.

The opinion states the case.

Mr. A. M. HERRINGTON, for the appellants.

Messrs. BLANCHARD & SILVER and Messrs. JOSLYN & SLAVIN, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action on the case, brought by appellee, in the Kane circuit court, against appellants, to recover for injuries received by falling from a car, and having his legs so badly injured or crushed by the engine passing over them, that they had to be amputated.

It appears that on Monday morning, the eighteenth day of November, 1867, appellee, who was employed by the company as a brakeman, while engaged in the discharge of his duty, and being on the end of a freight car, holding to an iron rod, in obeying an order from his superior, in attempting to descend from the car for the purpose of uncoupling it from the engine, swung himself around so as to descend by a ladder on the side of the car, but owing to the fact that it was out of repair, lacking two rounds, that were missing, he failed to get a hold for his feet, and the weight of his body broke his hold of the iron rod, when he fell to the ground, and the engine, which was backing at the time, passed over his legs and crushed and injured them so that amputation became necessary.

The jury found a verdict in his favor, and assessed the damages at $18,000. A motion for a new trial was entered by defendants, but was overruled by the court, and judgment rendered on the verdict. An appeal was perfected, and the case is brought to this court and errors are assigned on the record. They question the correctness of the decision of the court in giving instructions for plaintiff, and in the refusal to give others for the defendants, the admission of evidence, and in overruling the motion for a new trial.

It is first insisted that there was a variance between the declaration and the proof; that in the declaration it is averred that the injury occurred while appellee was acting as a brakeman on a freight train of appellants, while the proof shows that he was acting as a brakeman in switching cars at the station, in making up a freight train. There is no dispute but the three or four cars being switched were freight cars, and were being propelled by an engine, and were what is generally understood to be a freight train. It was a train of freight cars, and therefore a freight train. It was a train used for the transportation of freight, as contradistinguished from a train composed of cars usually employed in transporting passengers, and called a passenger train. In this we perceive no variance,

and the evidence was properly admitted for the consideration of the jury.

It is next urged that appellee was guilty of negligence in not seeing and knowing the ladder was defective, and in attempting to descend, in not placing his feet upon the two lower rounds of the ladder.

This was a question fairly falling within the province of a jury to determine. But when it is remembered that he occupied a subordinate, although a highly responsible place, requiring vigilance, with prompt action, it is not to be expected or required that he should act with that deliberation and circumspection as persons having more time and less pressed to prompt action in the performance of their duty. In the discharge of his duties on a switch he must keep a constant watch for the signal from his superior, which, to him, is a peremptory order, requiring instant obedience. This being so, we could not expect him to deliberately examine a ladder to see whether it was in repair. He, no doubt, seated himself so as to be in position, when ordered, to swing himself around on the ladder and descend in the shortest space of time possible, to uncouple the train from the engine, and, keeping a constant look for the signal, he probably did not see the ladder, but knowing it was there, felt sure that he could use it in the discharge of his duty, and hence did not observe the defect.

It is again urged that it was the duty of appellee to see and know the condition of these steps, and the case of the *Illinois Central R. R. Co.* v. *Jewell*, 46 Ill. 99, is referred to in support of the position.

It is there said the condition of the brake is under the special care of the brakeman, and that it is his business to see that it is in a fit condition for use, and to report defects to the company. While this is true, it is with the qualification that the brakeman knew, or could by reasonable precaution know, of the defect. If the defect is inherent from improper material, or from unskillful workmanship, and the defect had

not been developed, he should not be held to have known the fact, and to report to the proper department.   As to these steps, there was no direct evidence whether appellee previously knew or could have known of this defect.   If this car had been used by the road while he was a brakeman on the train of which it was a part, then he would be presumed to have known of its condition, and required to govern his conduct in reference thereto.   This was a matter of inference from the evidence in the case, to be determined by the jury, from all the circumstances in proof.

It is held to be the duty of these companies to furnish to their employees safe materials and structures.   Such an obligation is permanent and can not be avoided by them by delegating the power to others, and the understanding with their servants is direct, that they will furnish suitable and safe materials and structures.   *Chicago & Northwestern R. R. Co.* v. *Swett,* 45 Ill. 197.

This car was placed upon the road by some one superior to appellee in authority, and he was acting under such authority. The jury might reasonably infer that those placing it on the road knew its condition.   He had no choice but to obey orders, and was compelled by those above him in authority to ascend the car and again descend and uncouple the car from the engine when required.   He was not, and could not be, responsible for the defect.   Nor should he be held liable for the defective car, as he neither furnished it nor placed it upon the track.   Nor should he be responsible for the acts of those who did, as fellow servants, as the fault was not that of such a servant engaged in the same department of the common business.   It was the act of a superior, in another department.

It was held in the case of the *Chicago & Northwestern R. R. Co.* v. *Sweet, supra,* that, although a railroad company may construct their road and furnish its machinery through its servants, yet other employees, in different departments are not to be prejudiced by the negligence of such servants.

Again, in the case of the *Illinois Central R. R. Co.* v. *Jewell,* *supra,* it was held that where the company had employed a reckless and incompetent engine driver, and his character was known to them, and he was still retained, the company was liable for the death of a brakeman killed by the recklessness or improper conduct of such driver. Hence, in this case, appellee should not be prejudiced by the negligence of those having charge of the inspection and repair of their cars, as they were superior to him in authority, and their notice of the defect was notice to the company, as they can only receive notice through the proper officers of the road.

We have carefully examined the instructions of appellants, which were refused, and find that all of them embodying principles applicable to the case were substantially given in their other instructions. We can perceive no objection to those given for appellee. The instructions given for appellants were all and were more than they had a right to have given. The jury seem to have been warranted in finding the issues for appellee.

We now come to the consideration of the question of damages. $18,000 is so large a sum that we regard it excessive. That amount put at interest, at the highest legal rate, would produce, annually, $1800,—more, by a large sum, than is obtained by the most skillful mechanics for their labor, while appellee, in the pursuit of his calling, as a brakeman, could probably not have received more than one-third of that sum. It is true that appellee has received a grievous injury, and has been rendered almost unfitted for business, but the railroad company should not be required to render to him a sum which would produce a greater income than he could have earned had he not been injured. He is only entitled to compensation, and not to vindictive damages, as corporations are not liable to more than compensatory damages, unless the injury is wanton or willful, and that is not the case in this record. But we can see, that after deducting physicians' bills, loss of time and other expenses, including counsel fees, the sum left, would, at

32—55th Ill.

interest, produce an annual sum largely above any amount he could have expected to earn, had he not been disabled.

This verdict seems to have been the result of passion or prejudice, and not of calm and dispassionate reflection. The finding must be in proportion to the injury sustained, and when it is greatly excessive, as it is in this case, it will be set aside. The judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*