THOMAS L. HARPER, BY THOMAS WOOD, HIS NEXT FRIEND, Respondent, v. THE INDIANAPOLIS AND ST. LOUIS RAILROAD COMPANY, Appellant.

1. *Damages — Railroad companies — Negligence — Servant — Skill — Liability of company.* — A servant who has been injured by the negligence, misfeasance or misconduct of a fellow-servant, can maintain an action therefor against the master, where the servant, by whose negligence or misconduct the injury was occasioned, was not possessed of ordinary skill or capacity in the business intrusted to him, and the employment of such incompetent servant was attributable to the want of ordinary care on the part of the master.

2. *Railroad company, action against for damages — Fireman, incompetent — Permission by engineer to act in his place — Liability of company.* — In suit against a railroad company for injuries done to plaintiff, if it appear that

Harper, by Wood, his next friend, v. Indianapolis & St. Louis R.R. Co.

the company was negligent or unmindful of its duty in employing competent and skillful servants in the execution of its business, and that injury resulted therefrom to a fellow-servant, it must be held responsible; and of the sufficiency of the proof to sustain this fact, the jury are the proper judges. And permission given by the company to an engineer to allow a fireman to act as an engineer, when he deemed the fireman competent, makes the company responsible for injuries resulting from a mistake or negligence of the engineer in permitting a fireman to handle the engine when incompetent for duty.

3. *Evidence — Witness, impeachment of, on irrelevant matter.* — A witness is not to be interrogated on a subject not pertinent to the issues involved, for the mere purpose of discrediting him.

### *Appeal from St. Louis Circuit Court.*

*Hanna,* and *Garesche & Mead,* for appellant.

I. The proof was uniform that the company tolerated the practice of engineers, at switches and on side-tracks, allowing their firemen to handle the locomotive only when the engineer deemed the fireman competent to do so. Even then the fireman was held responsible for the train. (Talmadge, 41.) The instruction ignores the fact altogether, yet it is a most important fact; for if the engineer, Griffith, imprudently confided the locomotive to Blansfield, an inexperienced or unskillful person, it was negligence of Griffith, but for which the company can not be held responsible, because negligence of his co-employee was one of the risks plaintiff assumed when he entered defendant's employment.

II. The company was relieved of liability when it provided a competent fireman and a competent conductor. If plaintiff seeks to recover because the engineer thought the fireman competent, and hence trusted to him the engine, it was his negligence, and plaintiff could not recover. This rule, so strictly enforced by our own decisions, is still more strictly upheld in Illinois, where the accident occurred, and where plaintiff and his father resided. (Cox v. Ill. Cent. R.R., 21 Ill. 25.) In Brinkman v. Cent. RR., 2 Lansing, 514, cited by respondent, the opinion is not adverse to us. It coincides exactly with Gibson v. Pacific R.R., 46 Mo. 163; Stevens v. N. Y. Cent. R.R., 1 Lansing, 110; Dynen v. Leach, 221, 26 Law J., April, 1857; Redf. Railw. 695; Shearman & R. Negligence, 110. This court has ruled that a defend-

ant can not impute a want of vigilance to one injured by his act, as negligence, if that very want of vigilance were the consequence of an omission of duty on the part of the defendant. Had he done his duty and stopped the train the accident could not 'have occurred. (Kennayde v. Pacific R.R., 45 Mo. 262 ; Morrissey v. Wiggins Ferry Co., *ante*, p. 521.)

*Leverett Bell* and *E. B. Sherzer*, for respondent.

The delegation of authority to the engineer by the defendant, to supply his (the engineer's) place with a fireman, is unquestioned. It is admitted that the fireman was incompetent as an engineer. The act of the engineer was, then, the act of the company, and the result necessarily follows that it was the defendant who permitted and authorized the fireman, Blansfield, to control the engine.

To us it seems clear that if a railroad corporation permit a fireman to manage an engine, it must be held responsible for the consequences. It will not do to say it "believed" him competent, or it had "no knowledge" of his incompetency ; for as a part of its duty to and contract with its servants, it agrees to employ or use reasonable efforts to obtain persons fitted for the various duties assigned them ; and as it steps out from or transgresses upon the plain dictates of reason and right, it becomes amenable under the law. That a fireman is not an engineer is true ; that therefore he is incompetent to fill an engineer's station, follows as a matter of presumption at least. Here the incompetency of the fireman was conceded, and the additional fact given in evidence that he was a fireman with but nineteen days' experience as such, having previously been a laborer. (See Ill. Cent. R.R. v. Jewell, 46 Ill. 101.) Railroad corporations are bound to know the qualifications of their employees.

The authority to supply an engineer's place on a locomotive, by a fireman, is a violation of the company's duty, and in itself evidence of the greatest negligence. No custom can affect it, for it is against law and reason. A railroad corporation can only escape the consequences of such an act by fully and satisfactorily establishing the competency of the fireman to perform an engi-

neer's duties. That defense was not made in this case. The incompetency of the fireman was admitted.

If it be contended by appellant that this action falls within the decisions of this court, upon the doctrine that an injury resulting from the negligence of a fellow-employee is not actionable, we might content ourselves by referring to the opinion of this court, in 44 Mo. 488, as a complete answer to such a proposition. In no sense did the injury herein complained of result from the negligence of a fellow-employee. True it is that the engineer, under an authority to appoint a competent person, appointed one, now admitted by defendant to have been incompetent for the position and duties. But it was the power to appoint one outside of that recognized class of skilled persons known as engineers, to manage the engine, that constituted the negligence complained of in this case. The power was general, and the engineer passed upon the competency. The appointment of an incompetent person, therefore, did not, as to the particular party or act, operate as a revocation of his authority; and defendant will not be permitted to say, if competent, that he was in by authority; if not, that permission was not given.

We say that permission and authority being given the engineer to appoint a fireman to the duties of an engineer, irrespective of the term of his service as such fireman, and pass upon his competency, the engineer does not, under such a power, act in his capacity as engineer. If he appoint an incompetent person, it is not because he is exercising his duties as an engineer in the management of his engine, but by virtue of a superadded and delegated power. He then becomes the agent of the company to select a substitute, and his action binds the company, not from his being an engineer, but in that he is acting by a delegated power, and one such as might be conferred on any other person not an engineer. In no sense does it come under the recognized duties of an engineer, nor flow as an incident from his employment. His act, therefore, in appointing a fireman to the duties of an engineer, being by permission of the company, by virtue of this agency, is the act of the company; and in appointing a fireman — one not an engineer or recognized as such — to an

engineer's duties, it becomes the company's negligence. (Cayzer v. Taylor, 10 Gray, 281, approved by this court in Gibson v. Pacific R.R., 46 Mo. 163 ; Buckner v. N. Y. Cent. R.R., 2 Lansing, 516 ; Snow v. H. R.R., 8 Allen, 444.)

WAGNER, Judge, delivered the opinion of the court.

This case was here on a former occasion, and will be found reported in 44 Mo. 488. The action was for damages, and after it was sent back by this court for a re-trial, there was an amended petition and a verdict for the plaintiff. The amended petition states "that on the 9th day of July, 1867, plaintiff was in the employ of defendant as conductor of one of its construction trains running on said road ; that on said day, while plaintiff was discharging his duties as conductor of said train, he was, without any carelessness or negligence on his part contributing thereto, but solely through the mismanagement of the locomotive engine attached to and drawing said train, thrown on the railroad track and injured, etc. ; that the injuries so complained of resulted to plaintiff while he was in the performance of his duties as aforesaid, without any carelessness on his part contributing thereto, solely and directly from the fault, negligence and want of care of defendant, in this : that there was no engineer at said time upon or in charge of said locomotive engine, but the same was then and there, without the knowledge or consent of plaintiff, but with the knowledge and by permission and authority of defendant, being managed and controlled by a fireman, said fireman being then and there, with the knowledge and by permission and authority of defendant, in the performance of an engineer's duties in and about said locomotive engine; that said fireman was not an engineer, nor was he fit or competent to perform the duties of an engineer in and about said locomotive engine, of all which defendant at said time had full and competent knowledge."

The defendant, answering this petition, failed to deny, and therefore admitted, that the fireman in charge of the engine at the happening of the injury was not fit or competent to perform the duties of an engineer in and about the locomotive engine, and that plaintiff suffered injury. All the remaining allegations

of the amended petition were controverted by the answer. Certain affirmative matter stated in the answer was denied in a reply filed by the plaintiff, but it was expressly admitted in the replication that William Griffith, the engineer who had been assigned to the locomotive of the train whereof plaintiff was conductor, was, at the time of the happening of the injury, a competent and skillful engineer.

The following abstract of the testimony presents the essential facts as proved upon the trial: that in February or March, 1866, plaintiff was appointed conductor of a construction train on defendant's railroad, and continued in defendant's service in that capacity until July 9th, 1867, when he suffered the injury complained of. His duties as conductor were to direct the engineer when and where to move the train; to superintend and oversee a party of twenty or thirty laborers attached to the train when at work, and to act as brakesman and switchman where his services in those capacities were required. Plaintiff had no other authority over the engineer than that stated above; and with the management and control of the locomotive he was not permitted to interfere, that being a skilled employment.

The fireman was subordinate to the engineer and not subject to the orders of the conductor. At the time of the happening of the occurrence which gave rise to this suit, William Griffith was engineer of the locomotive attached to the train, and James Blansfield was fireman. Blansfield was appointed fireman on the 20th of June, 1867, previous to which time he had been a laborer. On the afternoon of July 9th, 1867, having finished work at Alton, plaintiff directed Griffith to take the train to Alton Junction, a distance of two or three miles; to slack up on arriving there, that plaintiff might cut off the last car, and then place the train in the sand-pit, a few hundred yards beyond the station. The train consisted of twelve or thirteen platform cars and a box-car, which was next to the engine. As the train arrived at the junction, plaintiff walked back, and, standing at the end of the last car but one, with his back to the locomotive, stooped down and pulled out the coupling-pin. Before he could recover an upright position, the train, which had slacked its speed and was moving

slowly, started suddenly ahead, plaintiff was thrown on the track, and was run over by the car which had been cut off and which was slowly following the train. When this occurred the engineer was on the platform at the junction, having, without plaintiff's knowledge, left the locomotive to the charge and management of Blansfield, the fireman, who had pursued that occupation but nineteen days. The movement of the train which threw plaintiff off was caused by the fireman letting on the steam. Plaintiff says in his testimony that he intended, after replacing the pin and regaining an upright position, to wave his hand for the engine to move ahead, but was prevented by the hasty and negligent act of Blansfield, who started without waiting for the signal. Upon this point there was evidence given for the defense tending to show that the plaintiff did give the signal; but this was rebutted by counter-testimony in support of the plaintiff's statement. The evidence was conflicting, and therefore the jury alone could determine the fact. It was further testified that on defendant's railroad, with the knowledge of the superintendent of engineers, and without objection from or any restraint imposed by them, firemen were permitted to manage locomotives, in the absence of the engineers, at side-tracks, stations, and when switching, if deemed competent to do so by their respective engineers; and that, in accordance with this state of facts, Griffith, deeming Blansfield competent, had, prior to the injury, yielded up the management of the engine to him. It was also shown that the management of a locomotive so far involved science, skill and experience, that firemen served an average term of three years as firemen before they were considered competent to assume the duties and responsibilities of engineers. Upon this state of facts the court gave the following instructions for the plaintiff:

" 1. If the jury believe from the evidence that the plaintiff, while in the employ of the defendant, without any fault or negligence on his part contributing thereto, through the mismanagement of the locomotive engine by a fireman, suffered injury, and they further believe from the evidence that the superintendent of engineers on, or superintendent of, defendant's road knew that the engineers of defendant's road permitted firemen to manage

and control locomotive engines, in the absence of engineers, about switches and stations, and failed or neglected to prohibit the same, then, unless plaintiff had knowledge that the fireman was permitted to do an engineer's duty therein on said engine, or was at the time of the accident performing said duty, they will find a verdict for the plaintiff.

" 2. The jury are instructed that it stands admitted by the pleadings in this case that the fireman, who at the time of the accident was in charge of the locomotive engine, was not fit or competent to perform the duties of an engineer in and about said locomotive engine."

The other instructions need not be noticed, as no point is made upon them in this court. For the defendant the court gave these instructions.:

" 1. The jury are instructed that, it being admitted by the plaintiff in his pleadings that William Griffith was a competent and skillful engineer, the plaintiff is forbidden to dispute the fact, and the jury must discard from their consideration so much of the testimony of John Harper as related to the incapacity or want of sobriety of Griffith.

" 2. The jury are instructed that if they believe from the evidence that, at the time of the injury sued for, plaintiff was in defendant's employ as a conductor of one of its trains, and in the discharge of his duties as such ; that the injury complained of was occasioned either by plaintiff's own carelessness, unskillfulness or negligence, or by that of the engineer or other person in charge of the train, they should find for defendant, provided defendant has exercised proper care in the selection of persons competent for the performance of the respective duties of engineer and fireman of the train whereof plaintiff was, at the time of the injury, conductor.

" 3. The jury are instructed that if they believe from the evidence that plaintiff, by his own recklessness, carelessness or unskillfulness, contributed to the injury for which he sues, or that by the exercise of ordinary care, skill or prudence on his part the accident could have been avoided, they will find for defendant."

The following instructions, which it is deemed necessary to notice as numbered in the series, and which were offered by the defendant, were refused:

"5. The jury are instructed that the incapacity of the fireman to act as an engineer does not justify a recovery against defendant unless it has been established that the defendant authorized him to act as such; and a permission to the engineer, when the fireman was by the engineer deemed competent to act temporarily as engineer, does not make the defendant responsible for a mistake or negligence of the engineer in permitting a fireman to handle the engine when incompetent for the duty.

*      *      *      *      *      *      *      *

"7. The jury are instructed that it is admitted by plaintiff in his pleadings that William Griffith, the engineer of the train at the time of the accident sued for, was a careful, competent and skillful engineer; if, therefore, the jury should find from the evidence that Griffith was guilty of negligence in surrendering charge of the locomotive engine of the train to one who was incompetent to manage it, and that plaintiff's injury was the result of such negligence, plaintiff is not entitled to recover, because the negligence of his fellow-servant was one of the risks he assumed by his hiring to defendant.

"8. The jury are instructed that if they believe from the evidence that plaintiff was, at the time of the accident sued for, in defendant's employ as one of the conductors of its trains, and that the injury sued for was occasioned by the negligence, carelessness or unskillfulness of one of those employed by defendant on the same train, and this without the knowledge or consent of defendant, then plaintiff is not entitled to recover, if defendant has taken proper care to engage competent servants to perform the duty assigned to them, or if the plaintiff, at the time of the accident sued for, knew that the fireman only of the train was in charge of the engine, and plaintiff was acquainted with the fireman's ability and skill to perform the duties of engineer.

"9. The jury are instructed that if they believe from the evidence that the injury was the result of the negligence or unskillfulness of one James Blansfield, a fireman at the time

acting as engineer, and unfit to perform the duties of an engineer; that Blansfield acted as engineer in compliance with a custom of the defendant to permit its firemen, in the absence of the engineer, to act as such, at stations or when switching; that this custom existed before plaintiff was employed as a conductor for defendant, and became known to him after his employment as conductor, then plaintiff is not entitled to recover."

The tenth instruction, in reference to the person in charge of the engine being subordinate to the plaintiff, was properly refused, there being no evidence to justify it.

The jury, in finding a verdict for the plaintiff, acting under the instructions of the court, must have found, and did find, that the plaintiff received the injury, and that he did not contribute thereto; that the accident happened in consequence of the mismanagement of a locomotive engine by a fireman; that the fireman was managing the engine with the knowledge or by permission or authority of defendant, and that this was without the plaintiff's knowledge or consent. The incompetency of the fireman to act as engineer is conceded. With the weight of the evidence we have nothing to do; the jury have passed upon that, and their verdict binds us. We have only to inquire whether the law was correctly laid down by the court.

Whilst this court has followed the prevailing doctrine that a servant of a corporation who has been injured by the negligence, misfeasance or misconduct of a fellow-servant, can maintain no action against the master for such injury, yet it has been expressly held otherwise where injuries to servants or workmen happen by reason of improper and defective machinery and appliances used in the prosecution of the work, or where the servant by whose negligence or misconduct the injury was occasioned is not possessed of ordinary skill and capacity in the business intrusted to him, and the employment of such incompetent servant is attributable to the want of ordinary care on the part of the master. (McDermott v. Pacific R.R. Co., 30 Mo. 115; Rohback v. Pacific R.R. Co., 43 Mo. 187; Gibson v. Pacific R.R. Co., 46 Mo. 163.)

In Shearman & Redfield on Negligence it is said that "proof of the employment of one who had always been a mere clerk or

a common laborer, to run a steam engine, would raise a presumption of negligence on the part of the master, without showing that he had actual notice of the servant's antecedents ;" for, as the authors state in another place, "it is the duty of a master to employ servants of sufficient care and skill to make it probable that they will not cause injury to each other by the lack of those qualities." (Shearm. & R. Negl., §§ 90–1.)

In the case of The Ill. Cent. R.R. v. Jewell, 46 Ill. 99, it was held that the company was liable to a fellow-servant for an injury received while in their employment, resulting from the incompetency of an engine-driver, where that incompetency was known to the company. In Wright v. N. Y. Cent. R.R. Co., 25 N. Y. 565, the court says : " The master is liable to his servant for any injury happening to him from the misconduct or personal negligence of the master, and this negligence may consist in the employment of unfit and incompetent servants and agents, or in furnishing for the work to be done, or for the use of the servants, machinery or other implements and facilities improper and unsafe for the purposes to which they are to be applied." In a later case in the same court, while recognizing and laying down the general rule that a master is not responsible to those in his employ for injuries resulting from the negligence, carelessness or misconduct of a fellow-servant engaged in the same general business, the court proceeds to say : " The only ground, then, which the law recognizes, of liability on the part of defendant, is that which arises from personal negligence, or such want of care and prudence in the management of its affairs or the selection of its agents or appliances, the omission of which occasioned the injury, and which, if they had been exercised, would have averted it." (Warner v. The Erie R.R. Co., 39 N. Y. 471.)

In Snow v. Housatonic R.R. Co., 8 Allen, 444–5, the Supreme Court of Massachusetts examines the principle and gives the rule the following clear 'exposition : " Now, while it is true, on the one hand, that a workman or servant, on entering into an employment, by implication agrees that he will undertake the ordinary risks incident to the service in which he is engaged — among which is the negligence of other servants employed in similar

services by the same master — it is also true, on the other hand, that the employer or master impliedly contracts that he will use due care in engaging the services of those who are reasonably fit and competent for the performance of their respective duties in the common service, and will also take due precaution to adopt and use such machinery, apparatus, tools, appliances and means as are suitable and proper for the prosecution of the business in which his servants are engaged, with a reasonable degree of safety to life and security against injury." The case of Noyes v. Smith, 28 Verm. 63, is also a case adopting the same principle; and while it recognizes fully the rule that a master is not liable to his servant for an injury occasioned by the negligence of a fellow-servant in the course of their common employment, the court says: "Such rule has no application where there has been actual fault or negligence on the part of the master, either in the act from which the injury arose or in the selection or employment of the agent which caused the injury." This opinion is sustained by citing to its support the case of Hutchinson v. Railw. Co., 5 Wells, Hurl. & G. 352, which also thus qualifies the rule that the master shall have taken due care not to expose his servants to unreasonable risks. The Vermont court there lays down this rule: "The master, in relation to his fellow-servants, is bound to exercise diligence and care that he brings into his service only such as are capable, safe and trustworthy; and for any neglect in exercising that diligence he is liable to his servant for injuries sustained from that neglect." It is not necessary that he should know that they are unsafe and incapable. It is sufficient that he would have known it if he had exercised reasonable care and diligence. (*Id.*, and cases cited; Gibson v. Pacific R.R. Co., 46 Mo. 163.) Again, in the case of Gilman v. The Eastern R.R. Corporation, 10 Allen, 233, 239, an employee of the defendant brought his action for an injury occasioned by the negligence of a switchman in failing properly to adjust the switch upon the track. The court held that the plaintiff, being a fellow-servant in the employ of the same railroad company, could not have recovered of their common master; but they add: "The evidence offered by the plaintiff at the trial was competent to show that the

defendant, knowingly or in ignorance, caused by its own negligence, employed an habitual drunkard as a switchman, and thereby occasioned the acccident. Of the sufficiency of this evidence a jury must judge. If the plaintiff can satisfy them that such misconduct or negligence in the defendant caused the injury, and that he himself used due care, he may maintain his action." In the same case they say : "It is well settled, both in England and America, that a master is bound to use ordinary care in providing his structures and engines and in selecting his servants, and is liable to any of his fellow-servants for his negligence in this regard."

These cases incontrovertibly establish the law and overwhelmingly support the theory upon which the case was submitted to the jury by the instructions. If the defendant was negligent or unmindful of its duty in employing competent and skillful servants in the execution of its business, and injury resulted therefrom to a fellow-servant, it must be held responsible. And of the sufficiency of the proof to sustain this fact the jury were the proper judges. The instructions given on both sides fairly and substantially embraced these views, and we think, therefore, that they were unobjectionable. As the whole case was presented by the instructions given, we see no error in the refusal of instructions for defendant, as, with one exception, they asserted nothing that was not sufficiently covered by those given. That exception is in the one numbered five in the series, and declares that a permission to the engineer, when the fireman was by the engineer deemed competent to act temporarily as engineer, did not make the defendant responsible for a mistake or negligence of the engineer in permitting a fireman to handle the engine when incompetent for the duty. This instruction concedes the authority from the company to the engineer to allow a fireman to handle the engine, but denies that the employment by the engineer is to be considered the act of the company.

Corporations can only act through their agents, and when they delegate power to an agent, and he executes that power, it is the act of the corporation. To say that where an officer or agent acts in pursuance of authority, a corporation may shirk its responsi-

bility by resorting to the device that his act was not the act of the corporation, would be monstrous injustice, and would effectually abrogate the sound old maxim, "*qui facit per alium facit per se.*" This very question was recently raised in the Supreme Court of the State of New York, and received a most masterly discussion by Mr. Justice Potter. In the course of his able opinion he says: "A corporation can not act personally. It requires some person to superintend structures, to purchase and control the running of cars, to employ and discharge men, and provide all needful appliances. This can only be done by agents. When the directors themselves personally act as such agents they are the representatives of the corporation. They are then the executive head or master. Their acts are the acts of the corporation. The duties above described are the duties of the corporation. When these directors appoint some person other than themselves to superintend and perform all these executive duties for them, then such appointee equally with themselves represents the corporation as master in all these respects; and though in the performance of these executive duties he may be and is a servant of the corporation, he is not in those respects a co-servant, a co-laborer, a co-employee, in the common acceptation of those terms, any more than is a director who exercises the same authority. Though such superintendent may also labor like other co-laborers, and may be in that respect a co-laborer, and his negligence as such co-laborer, when acting only as a laborer, may be likened to that of any other, yet when, by appointment of the master, he exercises the executive duties of master — as in the employment of servants, in the selection for adoption of the machinery, apparatus, tools, structures, appliances and means suitable and proper for the use of other and subordinate servants — then his acts are executive acts, are the acts of a master, and then corporations are responsible that he shall act with a reasonable degree of care for the safety, security and life of the other persons in their employ. These executive duties may also be distributed to different heads of different departments, so that each superintendent, within his sphere, may represent the corporation as master. In controlling and directing structures, in employing and dismissing operatives,

Harper, by Wood, his next friend, v. Indianapolis & St. Louis R.R. Co.

in selecting machinery and tools, thus he speaks the language of a master. Then he issues *their* orders to *their* operatives. Then he is the mouthpiece and interpreter of their will. Their voice, which is silent, is spoken by him. He, then, only speaks their executive will; not the irresponsible will of a fellow-workman or co-laborer. The corporation can speak and act in no other way. His executive acts are their acts; his negligence is their negligence; his control, their control. He has in this executive duty no equal. He is not, while in the performance of these executive duties, only the equal of the common co-laborer or co-servant." (Brickner v. N. Y. Cent. R.R. Co., 2 Lansing, 506.)

If there are any cases which sustain the defendant's view on this point, I have been unable to find them. The result of such a doctrine would be to open a door to allow corporations to escape all responsibility for accidents occasioned by the negligence of their executive agents, and thus make it profitable for such institutions to manage all their affairs in that way. I see no error in the court's refusing the instruction. It asserts a principle contrary to law and sound morality.

It is objected, too, that the court erred in ruling out certain evidence offered for the purpose of impeaching the testimony of the plaintiff's father. The father testified on the trial that he had not said that no one was to blame for the accident that happened to his son. Evidence was offered on this point to contradict him. The father was not present at the time of the injury, and, consequently, what he said in this regard was irrelevant and immaterial — being mere hearsay and totally inadmissible. A witness is not to be interrogated on a subject not pertinent to the issue, for the mere purpose of discrediting him. It was wholly immaterial as to what the father stated in reference to the accident or how it happened, as he was not present at the occurrence and was not competent to speak concerning it. I have observed nothing else in the record requiring any particular remark or consideration.

The judgment must be affirmed. The other judges concur.