## CHICAGO AND ALTON RAILROAD COMPANY
## v.
## ELSIE BRAGONIER, Adm'x.

1. RAILROADS—FOREIGN CARS—LIABILITY FOR DEFECT.—If a railroad company permits a defective and dangerous car to come into its yards or upon its tracks, and remain for so many days that it might by the exercise of a high degree of diligence discover its condition, and if from the want of such diligence an injury happen to an employe, who was exercising due care, the company will be liable, although it does not own the car.

2. DUTY OF RAILROADS IN RESPECT OF CARS.—Railroad companies are held to a high degree of care in providing safe and suitable cars and machinery for the use of their employes, but they are not insurers of the absolute safety of such cars or machinery.

3. INJURY TO EMPLOYE—NEGLIGENCE OF FELLOW SERVANT.—Every employe in entering upon his employment assumes all the ordinary risks of his employment, including the unskillfulness and negligence of his fellow servants, and to justify a recovery it must appear that the act of negligence complained of was the act of some one for whose conduct the common principal was responsible.

4. DUTY OF BRAKEMEN.—The injury was caused by a defective brake, and the car had passed several inspection stations without the defect being discovered. It was the duty of the brakemen using the car, as well as of the car inspector to notice and report the defect, if it existed, and if they were negligent in this respect, and by reason thereof the deceased was killed, the question arises whether or not the brakemen were fellow servants with him, and if they were no recovery can be had.

5. CARE REQUIRED OF EMPLOYE.—The deceased was a brakeman, and came to his death while coupling cars. The degree of care required to be exercised by him is the same degree of care for his personal safety with which the same work would have been done by an ordinarily prudent brakeman.

6. PROPER CARE.—An instruction that the railroad company is bound to exercise "proper" care, etc., is erroneous, because it does not define what constitutes "proper" care. The law prescribes the *degree* of care required in every class of cases, and leaves to the jury to say whether such care has in fact been exercised.

APPEAL from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Messrs. WILLIAMS, BURR & CAPEN, for appellant; that a person engaged in an employment is bound to exercise such care for his own safety as a reasonably prudent man would

exercise in that employment, cited Clark v. C. B. & Q. R. R. Co. 92 Ill. 43; Penn. Co. v. Lynch, 90 Ill. 333; T. W. & W. Ry. Co. v. Black, 88 Ill. 112; Richardson v. Cooper, 88 Ill. 270.

Railroad companies may make reasonable rules and regulations for governing the conduct of employes: Woolsey v. L. S. etc. R. R. Co. 33 Ohio St. 227; I. C. R. R. Co. v. Whittimore, 43 Ill. 420.

If a person is injured by his own carelessness he can not recover of his employer: Allerton Packing Co. v. Egan, 86 Ill. 253; C. & A. R. R. Co. v. Rush, 85 Ill. 570.

It is the duty of a brakeman to know that the brakes on his train are in order: Ill. Cent. R. R. Co. v. Jewell, 46 Ill. 99; T. W. & W. Ry. Co. v. Eddy, 72 Ill. 138; C. & N. W. R. R. Co. v. Jackson, 55 Ill. 492.

An employe can not recover for injuries received by the carelessness of a co-employe in the same line of employment: C. & A. R. R. Co. v. Murphy, 53 Ill. 336; Valtez v. O. & M. Ry. Co. 85 Ill. 500; C. & A. R. R. Co. v. Rush, 85 Ill. 570; Ill. Cent. R. R. Co. v. Keen, 72 Ill. 512.

Mr. WILLIAM E. HUGHES, for appellee, cited Braun v. C. R. I. & P. R. R. Co., Vol. 10, No. 7, Reporter; T. W. & W. R. R. Co. v. Frederick, 71 Ill. 204.

McCULLOCH, J. Appellee's husband was a brakeman in the employ of appellant, and while engaged in coupling a car to its engine, received injuries from which he died. This suit is brought to recover damages sustained by appellee in consequence of the death of her husband, occasioned, as is alleged, by the negligence of appellant.

The car in question was a foreign one, which was temporarily upon appellant's track. It came on the track at Joliet, on the second day of August, passed through Bloomington, and on the next day arrived at Jacksonville, where it remained four days. Leaving Jacksonville on the seventh, it passed through Roodhouse, and about three o'clock on the morning of the 8th of August arrived at Whitehall, where the injury

was received. The deceased got on the train at Roodhouse, about an hour before the accident.

The acts of negligence complained of are, that appellant suffered this car to come and remain upon its track, and in the train upon which the deceased was employed, in a defective condition and out of repair. The rachet wheel and its dog, by which the brakes are secured in position to hold the car stationary, being defective, broken, or worn out, so as to be insufficient to perform their respective duties.

The train was made up at Roodhouse, which is a car inspecting station. Joliet and Bloomington are also car inspecting stations, but Jacksonville is not. At Whitehall there is a descending grade, upon which the car in question was standing just before the accident, the forward part of the train having been detached to set some other cars on the side track, leaving this car standing alone. When the engine backed up to take this car, the deceased attempted to make the coupling, but failed. The force of the concussion caused the car to move backwards a short distance, when the deceased stepped between the rails in the rear of the engine, and while in the act of changing the coupling link from one pocket to another, the car returned of its own accord and caught him in such a manner as to cause his death. There is no evidence whatever that the defective condition of the car was discovered, either by the car inspectors at Joliet, Bloomington or Roodhouse, or by the conductors or brakemen in charge of it from Joliet to Whitehall. The brake was not set at the time of the accident, but when the engine was detached from it a few minutes before, the car had been chucked by another brakeman named Dougherty, by placing a stone in front of and under a wheel, to prevent its forward movement.

It is claimed that this "chucking" was rendered necessary by the defective condition of the car; that appellant was bound to exercise the same high degree of care in respect to this car as if it had been one of its own; and that by the exercise of such care it might have discovered the defect in time to have avoided the accident. The other brakeman, Dougherty, testifies that he got upon the car and attempted to set

the brakes, and found that the rachet would not hold, where-upon he got down and "chucked" it.   This is the pivotal point in the case, for if there had been no attempt to use the brakes, and no known reason for not doing so, the injury to the deceased would be attributable either to his own fault, or to that of his fellow servant, in which cases no action would lie.

Appellant was, no doubt, bound to exercise a high degree of care to see that a foreign car, coming on its road to be operated by its servants, was in a safe condition.   In a some-what similar case to the present (C. B. & Q. R. R. Co. v. Avery, 8 Bradwell, 133), where the evidence showed that the car had been in a damaged condition for several days, we held that if the railroad company permitted a defective and dan-gerous car to come into its yards for so many consecutive days, that it might, in the exercise of a high degree of dili-gence, have discovered its condition; and if, from a want of such care, an injury happened to an employe who was exer-cising due care, the company would be liable, although it did not own the car.   We see no reason now for departing from this ruling.

But in the present case the defect was not discovered until but a few minutes before the accident.   Nor does the evidence show the defect to have been so apparent as to attract the attention of the brakemen along the line, whose business it was to exercise diligence, and to report defects discovered by them in the cars under their care.   T. W. & W. Ry. Co. v. Eddy, 72 Ill. 138; C. & N. W. R. R. Co. v. Jackson, 55 Ill. 492.

Now, it is probable from the evidence that the defect in this car could be discovered only when it was in motion; that when stationary the rachet would hold, but when the car was in motion, the action of the wheels upon the brakes would shake it loose.   Dougherty does not say whether or not, when he attempted to set the brakes, the car was in motion.   Wal-dron, the only other witness who testifies to its defective con-dition, says he tried it after they left Whitehall, and it would not *stay* set; the dog was loose, and the points so blunt it would not *stay set in the notches*.   When the car arrived at

Jerseyville, on the same day, it was set out on a side track where there was a grade on which cars would move of their own accord, but nothing out of the way was noticed about this car at that time, although the party loading the car at that station had special orders not to load any car if the brake was out of order.

It is only by inference or presumption, therefore, that the car inspectors at Joliet, Bloomington and Roodhouse are chargeable with negligence. Because it is found with a defective rachet at Whitehall on the 8th of the month, we are asked to presume that some or all of the car inspectors between that point and Joliet were guilty of negligence which caused the death of appellee's husband.

But this argument involves a presumption, equally strong, that the conductors and brakemen along the line of the road were likewise negligent in not discovering and reporting the alleged defects to their superiors. Their opportunities for discovering the defect in question were fully equal to those of the car inspectors. For *their* negligence in this particular appellant would not be responsible to appellee, as they were his fellow servants.

Railroad companies, or individuals owning or operating railroads, are rightfully held to a high degree of care in providing safe and suitable engines, cars, and machinery for the use of their employes. But, from necessity, they are required to operate their roads through the instrumentality of human agents, many hundreds or perhaps thousands of whom are distributed among their lines of road. So long as any one of these agents acts within the scope of his employment, he for the time being represents the principal. It sees with his eyes, hears with his ears, works with his hands and stands sponsor for all he does. In this regard the brakeman while working in the line of his duty represents his principal as fully as any other employe, agent, or officer of the company. But each one of these subordinate agents, in entering the employment of his principal, assumes all the ordinary risks of his employment, including the unskillfulness or negligence of his fellow servants. If he suffers from the negligence of an agent or em-

ploye of the common principal, engaged in another line of service, such negligence may be imputed to the principal. But to justify a recovery the acts of negligence complained of must be the acts of some one or more individuals for whose conduct the common principal is responsible. When, therefore, an injury is caused to any of these employes, care must be taken to see whether the negligence complained of was or was not that of a fellow servant.

Some evidence was introduced to show that no attempt had been made by Dougherty, or any one else to set the brakes at Whitehall, and also to show the deceased to have been guilty of negligence, contributing to his injury. As the case must go before another jury, we forbear any comments upon this branch of this testimony. We have outlined it thus far, only to show the nature of the acts of negligence complained of, in order that we may see if the law has been properly applied.

Appellant was not an insurer of the absolute safety of the car in question. C. & A. R. R. Co. v. Platt, 89 Ill. 141. It was neither the owner nor the builder of it, but simply using it, for the time being, in the transaction of its business. It came upon appellant's track at Joliet, where was a car inspecting station, ran from there to Bloomington, another car inspecting station, thence to Jacksonville where it remained several days, and passed through Roodhouse, the last car inspecting station before the accident, in the night time. If the car had been so defective as to attract the immediate attention of any, whose duty it was to inspect it at these several car inspecting stations, it seems very singular that none of the brakemen along the road, whose duty it was to work with this car and whose safety depended upon its good condition, did not discover and report it. Appellant had no means of knowing its condition except from information to be derived from its employes along the road. If any of these were guilty of negligence in the performance of their respective duties by which the deceased lost his life, the question then arises whether or not they were fellow servants with him. If so, then appellant can not be held liable.

We are of the opinion that some of these principles were

overreached by the instructions given on behalf of appellee. By the first, the jury are informed that it is the duty of a railroad company to exercise a high degree of vigilance in furnishing cars free from defects, arising from want of repairs, which would render them dangerous. The second is to the effect that a brakeman has a right to expect that the cars with which he is to work are safe and suitable wherewith to work, and that the company has exercised a high degree of vigilance to ascertain any defects in the cars, arising from want of repair, which would render them unsafe. The fifth applies the same rule of care to a foreign car, as to one owned by the company itself. The third informs the jury that the danger arising from the use of a defective or unsafe car, of whose defect or insecurity he has no notice, is not one of the dangers incident to the employment of a brakeman. These instructions state the law in favor of appellee as fully as could have been asked. The degree of care required of the deceased is properly expressed in the eighth instruction to be, " the same degree of care for his personal safety with which the same work would have been done by an ordinarily prudent brakeman."

But the degree of care to be exercised by appellant is not so carefully guarded. The fourth of appellee's instructions informs the jury, " that the undertaking of a railroad company with its brakemen to exercise *proper care* to furnish safe and suitable cars to work with, is a direct undertaking between the railroad company itself, as the master, and its brakeman, as the servant and employe," etc. The former instructions had already required of appellant a high degree of care in providing safe cars for the use of its employes. This instruction could very readily be construed by the jury to mean, that appellant was under contract with the deceased to exercise *proper* care to do so. What degree of care is meant by *proper* care is not stated, but that is left wholly to the jury.

In Strattan v. Cent. City Horse R'y Co. 95 Ill. 25, the use of this term in an instruction is condemned, as leaving the jury to determine a question of law as to what is proper care. The court say, " the law prescribes the *degree* of care *required* in every class of cases; in other words, what is proper care is

determined by the law, and is to be declared by the court; whether *such* care has in fact been exercised in the conduct of a party, in a given case, is a question of fact, which may properly be submitted to a jury." The language of the instruction in question is in no way modified by any other one given on either side. Under it the jury were at liberty to say that appellant was bound to insure the absolute safety of its cars.

The sixth of appellee's instructions embodies as a proposition of law that the persons employed by a railroad to inspect cars running upon its railroad, and to make repairs upon said cars, are not "fellow servants" of a brakeman who is required by the company to work with and upon said cars, in such sense as to exempt the company from liability on account of their negligence. We are not prepared to say the law takes such cognizance of the different lines of employment of railroad employes as to determine, without proof, who are and who are not fellow servants. But assuming as the proof in this case seems to indicate, that their employment is wholly separate and distinct, yet it is equally true that the deceased was chargeable, not only by law, but by the regulations of the company, with a certain degree of oversight in respect to the condition of the cars, and was required to report their condition when found to be out of repair. All other brakemen along the line of the road were chargeable with like duties. This instruction standing alone might not have been objectionable, as it is limited to persons employed by the company to *inspect* cars and to *make repairs* upon them. The seventh instruction after defining other necessary conditions of recovery proceeds in these words: " And if you further believe from the evidence that said car had been upon the defendant's railroad long enough so that its servants, whose duty it was to *examine* the cars running thereon, could, by the exercise of a high degree of vigilance, have learned the unsafe and defective condition of said car, you should by your verdict find the defendant guilty." This instruction is broad enough to cover the negligence, not only of the car inspectors at the various car shops, but also that of conductors and other train men who have a like duty to perform, while in charge of the

train. As before seen the defect in this car might have been perfectly apparent when in motion, and yet not have been discoverable by the exercise of a high degree of care when at rest.

Assuming therefore that the employment of a car inspector is wholly different from that of a brakeman, appellant ought not to be held liable, unless it is made to appear that the deceased came to his death through the negligence of the former and not of the latter.

In view of the nature of the case made out by the proof, so far as it tends to prove negligence on the part of appellant, we are of the opinion the rules of law were overstrained in the giving of appellant's sixth and seventh instructions, and that the use of the term *proper care* in the fourth was positively mischievous, and it ought not to have been given. The judgment is therefore reversed and the cause remanded.

Reversed and remanded.