Consolidated Coal Co. v. Hænni.

---

## Consolidated Coal Co. of St. Louis v. Hænni.

1. *Master and Servant—Risks Assumed by the Servant—Extra Risks.* —It devolves upon the master to prepare the appliances and machinery to be used in and about the business engaged in, with such reasonable care that the servant will not be exposed to perils beyond such as pertain to the work. Extra risks resulting from a failure of the master to discharge this duty do not come within the danger assumed by a servant.

2. *Master and Servant—Notice of Defects.*—Where appliances are contrived and constructed for temporary use without the assistance or knowledge of the employe, not in his care or control, never having operated them or had an opportunity to inspect them, the employe is not chargeable with notice of their defects, either in plan or construction.

3. *Fellow-Servants.*—A person was employed as a "mine blacksmith for Mine No. 10;" the employer (a corporation) was about to raise a smoke-stack from the ground and place it in position on a base prepared for it on the roof of the boiler-house of "Mine No. 9." No particular servants of the company were charged with the duty of raising stacks. Such work being required only at long intervals, it was customary to call upon any of its employes to assist in the work, and so notified the blacksmith, while he was at work at his anvil, to assist in raising the stack. While doing so, appliances gave way and the stack fell upon him and he was injured. The mode of doing the work of arranging the ropes and pulley by which the stack was to be raised was devised and constructed by servants of the company who were superior in authority to the blacksmith, and with whom he in no wise co-operated in the work, nor was he consulted about it. Under such circumstances the fact that the arrangements were made and machinery constructed and furnished by other servants of the company will not relieve the common master from liability arising from a defect in the machinery or from a lack of ordinary care and skill in the preparation of the contrivances to do the

work of raising the stack. The relation of fellow-servants does not exist between them and the blacksmith.

4. *Employe's Right to Assume that Appliances, etc., are Reasonably Safe.*—Where an employe of a company is unexpectedly called upon to assist other servants or employes of the company in performing a work not in the usual line of his employment, for instance raising and placing in position a smoke-stack, without an opportunity of seeing or knowing whether the appliances are properly constructed or in fit and safe condition for the work, such employe has the right to assume that the arrangement of the appliances and machinery for performing the work had been so skillfully and carefully planned and executed that those assisting in operating would not be unreasonably exposed to danger other than such as was inseparable from the character of the work about to be done.

5. *Co-employes—Lines of Employment—Emergencies.*—An employe called upon, without previous notice, to assist other employes of a common master in the performance of a work of an emergency character, and not in his ordinary line of employment, is warranted in supposing that such care has been taken and such skill and intelligence employed in preparing for the work, that he would not be exposed to additional danger from the slightest indiscretion of another workman or from a slight disarrangement of the appliances.

**Memorandum.**—Action for personal injuries. Appeal from the Circuit Court of Macoupin County; the Hon. JAMES A. CREIGHTON, Circuit Judge, presiding. Heard in this court at the November term, 1891, and affirmed. Opinion filed October 24, 1892.

### STATEMENT OF THE CASE BY THE COURT.

The appellee was in the service of the appellant company as a "mine blacksmith" for Mine No. 10. On the first day of August, 1890, the appellant company desired to raise a smoke-stack from the ground and place it in position on a base prepared for it on the roof of the boiler house of Mine No. 9. The stack was of iron, a round, smooth cylinder about 35 feet long, 2½ feet in diamater, and weighed 3,800 pounds. No particular servants of the appellant company were charged with the duty of raising stacks. Such work was only required to be done at long intervals, and it was customary to call upon any of its employes to assist in the work of pulling at the ropes, by which the stack was to be raised. The appellee, while at work at his anvil, was notified to so assist on the occasion named, whereupon he left

this blacksmith shop at mine No. 10 and went to mine No. 9, where the stack was to be put up.   When he arrived upon the ground the arrangements for hoisting the stack had been completed, the appellant company having, through men deemed competent for the purpose, prepared the guy pole, blocks and tackle and ropes, and attached them to the stack as by them deemed proper.   The appellee was, with others, called to pull upon the ropes.   While so doing, the stack fell, and striking the right leg of the appellee, cut it off below the knee.   The fall of the stack is claimed to have occurred because of the alleged negligent manner in which the ropes and blocks and tackle were arranged, connected and attached to the stack.   A guy pole, forty-four feet in height, had been erected, extending to the roof of the engine house, at a point conveniently distant from the place where it was intended the stack should stand.

At the top of this pole was a hook, to which was suspended a block and tackle.   At the bottom of the pole was a snatch block.   Around the smoke-stack, which lay upon the ground, a rope had been twice passed and so tied as to leave a projecting loop.   Another rope passed through the snatch block at the bottom of the guy pole, then up the pole to and through the pulleys of the block and tackle, out its top, and from there to and through the pulley of another block and tackle, the hook of which was hooked into the loop in the rope that encircled the stack.   The stack was to be raised by the strength of men pulling upon the rope horizontally from the snatch block at the foot of the pole.   There was tied around the stack near its lower end another rope of sufficient length to be held by men upon the ground for the purpose of steadying and balancing the stack and pulling it into position upon the base prepared for it when it should be raised to the proper height.   The appellee was directed to pull upon this balancing or steadying rope.   When the stack had been raised about fifteen feet it slipped for near a foot through the rope that was twice around it.   The loop of that rope slipped out of the hook of the block and tackle, and the stack, having nothing to support it, fell upon

the roof of the boiler house and rolled from there to the ground where it struck and cut off the right leg of the appellee.

Upon a trial before a jury a verdict was rendered against the appellant in the sum of $5,000. In addition to the general verdict the jury returned a special finding as follows:

Question. Of what acts of negligence was defendant or its servants guilty which caused plaintiff's injury?

Answer. First, by removing plaintiff from his professional job; second, by improper arrangements for raising the smoke-stack.

This is an appeal from a judgment rendered upon the verdict of the jury.

CHARLES W. THOMAS, attorney for appellant.

GEORGE L. ZINK, and JAMES M. TRUITT, attorneys for appellee.

OPINION OF THE COURT, the Hon. Carroll C. Boggs, Judge.

If it be conceded that it was the duty of the appellee, though employed as a mine blacksmith, to assist in raising the smoke-stack, it would only follow that he assumed the risks and hazards ordinarily attendant upon such an undertaking.

It devolved upon the appellant company to prepare the appliances and machinery to be used in hoisting the stack with such reasonable care and skill that the appellee would not be exposed to perils beyond such as pertained to the work. Extra risks, resulting from a failure of the master to discharge this duty, do not come within the danger assumed by a servant. U. S. Rolling Stock Co. v. Wilder, 116 Ill. 110; Chicago and North Western R. R. Co. v. Jackson, 55 Ill. 492.

In the instance at bar, the appliances were contrived and constructed for temporary use without the assistance or knowledge of the appellee. They were not in his care or

control, nor had he ever operated them or had an opportunity to inspect them, and therefore he is not chargeable with notice of their defects either in plan or construction.

The mode of doing the work, the arrangement of ropes, pulleys and pole, was devised and constructed by servants of the appellant who were superior in authority to the appellee, and with whom he in no wise co-operated in the work, nor was he consulted about it. Under such circumstances the fact that the arrangements were made and machinery constructed and provided by other servants of the company, would not relieve the common master from liability arising from a defect in the machinery or from a lack of ordinary care and skill in the preparation of the contrivances to do the work. The relation of fellow-servants did not exist between them and the appellee. Chicago and North Western R. R. v. Jackson, *supra*.

When such other servants of the appellant deemed the machinery and appliances completed, the appellee was summoned to come and lay hold upon the ropes and take part in the hoisting of the stack, without opportunity to see or know whether the appliances were properly constructed or in fit and safe condition for the work.

He had, therefore, the right to assume that the arrangement of ropes and pulleys and the manner of their attachment to the stack had been so skillfully and carefully planned and executed that those assisting in operating them would not be unreasonably exposed to danger other than such as was inseparable from the character of the work about to be done. He was warranted in supposing that such care had been taken and such skill and intelligence employed in preparing for the work that he would not be exposed to additional danger from the slightest indiscretion of another workman or from a slight disarrangement of the appliances. Toledo, Wabash and W. R. R. Co. v. Fredericks 71, Ill. 294.

Whether the appliances provided were reasonably safe, efficient, and properly constructed and connected, was a question of fact for the determination of the jury. The

special finding of the jury was against the appellant on this point. We think there is no substantial objection to the instructions given the jury, and it only remains to be seen if there is sufficient evidence to support the conclusion reached by the jury.

We think the evidence clearly shows how and why the stack fell. It was a round, smooth iron stack, weighing nearly two tons. A rope, in which a loop was formed, passed twice around it at a point nearer the upper than the lower end. Into this loop was thrust an open hook, attached to a block and tackle, through the pulleys of which passed a rope that extended to the block and tackle at the top of the guy pole and from thence to the snatch block at the bottom of the pole, and thence into the hands of those who were to raise the stack by pulling horizontally upon the rope.

Another rope was tied around the lower part of the stack, to be used in steadying and pulling it to its place upon the top of the roof.

At the proper time the workmen holding the rope which passed horizontally from the snatch block applied their strength to it, lifted the stack from the ground and drew it up into the air—its upper end pointing directly to the top of the pole, and its weight held and sustained by the loop of the rope which had been placed in the hook of the block and tackle.

The great weight of the stack held the rope tense and taut in a straight line from the top of the pole to the point of the connection of the hook and the loop. While it was thus suspended in the air about fifteen feet above the ground, the stack, owing to its smooth surface, slipped and dropped for a distance of near one foot through the rope that encircled it, thus suddenly relieving the tension of the pulling rope, which at once slackened, dropped the hook out of the loop, and the stack, left without support, fell to the ground. A sudden slacking of the rope from any other cause would have produced the same result.

Had the stack struck and its weight rested upon the roof, the same result would most probably have followed. Any

sudden jerking of the pulling rope, with the consequent reaction, might have dropped the hook from the loop. We may safely venture the assertion that all who were engaged in the operations of that day would decline to assist in raising another stack with the same arrangements of hooks and loops.

Experience has shown its hazards, and in the view of the jury, ordinary prudence and foresight, and the consideration of universally known natural laws, would have made them apparent in advance to any one qualified and competent to adopt a plan, and construct and arrange appliances for such dangerous operations.

That an unwieldy iron stack of such great weight, drawn from the ground and suspended in the air above a number of workmen, held only by a loop in a rope thrown over the curve of an iron hook, would endanger the lives of those below, needs but to be stated to be admitted. Safety, it seems, could have been assured from this danger by knotting or tying the loop or rope to the hook, and we can not say that the jury was wrong in holding that a failure to secure it in the hook in some way was not the exercise of reasonable care and skill upon the part of those preparing the appliances for the work. The question was one of fact for the jury, and we do not feel authorized to say from the evidence that the conclusion reached by the jury was manifestly wrong. It is not complained that the damages allowed are excessive. The law of the case was, we think, fairly stated in the instructions. The judgment must be affirmed.