[Civil No. 366.  Filed March 8, 1894.]

[36 Pac. 396.]

## F. E. JORDAN et al., Plaintiffs and Appellants, v. JOHN DUKE et al., Defendants and Appellees.

1. EVIDENCE—IRRELEVANT AND IMMATERIAL—PREJUDICIAL.—The admission of evidence irrelevant and immaterial to the issues, and sufficient to prejudice the jury against the appellants, requires a reversal of the judgment.

2. JURY — INSTRUCTIONS — SUBMITTING QUESTION OF LAW TO JURY — MINES AND MINING.—An instruction containing the expression that if the mining ground was "not in the actual possession of one entitled thereto" at the time appellants located the same, then they were entitled to recover, submits a question of law to the jury, and is error.

APPEAL from a judgment of the District Court of the Fourth Judicial District in and for the County of Yavapai. Edmund W. Wells, Judge. Reversed.

The facts are stated in the opinion.

Herndon & Hawkins, for Appellants.

The witness Henry C. Ashton, who testified for the defendants, detailed a conversation he claimed to have had with plaintiffs' witness Kell during the trial of this cause; the substance of this pretended conversation was, that Kell was a friend of the Verde people (meaning the owners of the United Verde Copper Company), and that he was going to do what he could to help them win the case. It will be observed that Kell had already been examined in regard to this matter while he was upon the stand. From an inspection of the testimony of this man Ashton and his pal, Dan O'Boyle, it will be seen that they were a pair of worthless, drunken loafers. Ashton denied having any interest in the matter, while

O'Boyle came out clear and said that he had not been promised anything, but that he was going to get some all the same, and they could not keep him out of it. The plaintiffs moved to strike out this testimony, because no proper foundation had been laid for its introduction. The Verde people were not parties to this suit, nor was Kell. The pretended contradiction was upon a matter wholly immaterial. The rule of law goes no further than to permit Kell to be interrogated upon these matters; when this is done defendants are not allowed to bring in witnesses to contradict, the rule being, that on immaterial matters the answer of the witness first examined is final and binding on defendants. Greenleaf on Evidence, pars. 449, 462; Rice on Evidence, p. 588f; *People* v. *Bell,* 53 Cal. 119; *People* v. *McKellar,* 53 Cal. 65; *Harper* v. *Illinois etc. R. R. Co.,* 47 Mo. 581.

The first instruction asked by the plaintiffs was to the effect that if from the evidence the jury found that on January 1, 1884, the ground in controversy was open, and that F. E. Jordan and his co-locators entered thereon and located the same by performing the acts necessary under the mining laws, reciting those facts, and since had done and performed the annual work, then the verdict should be for the plaintiffs. The court refused to give this instruction as asked, but modified it by adding "or was not in the actual possession of one entitled thereto," in the third line of the instruction, and gave the instruction so modified. The plaintiffs assign this as error. This modification raises purely a question of law. "In the actual possession of one entitled thereto." How could one be "entitled" to actual possession without complying with the mining laws and regulations? And would actual possession be of any avail against an actual locator? *Horswell* v. *Ruiz,* 67 Cal. 111, 7 Pac. 197; *Belk* v. *Meagher,* 104 U. S. 284; *Hopkins* v. *Noyes,* 4 Mont. 550, 2 Pac. 280.

Baldwin & Johnston, for Appellees.

ROUSE, J.—Appellees filed in the land office at Prescott, Arizona, in May, 1891, an application for a patent to a certain mining claim in Verde Mining District, Yavapai County, Arizona, called the "Copper Chief." In July thereafter, appellants filed in said land office their contest to said appli-

cation for a patent to said mining claim, on the ground that 6.14 acres of the land embraced in said mining claim was the property of the appellants, and within the limits of a certain mining claim belonging to them, called the "Equator." Upon the filing of said contest an order was duly made in said land office, by the proper officers thereof, staying all further proceedings in the matter of said application for a patent until the rights of the parties to that portion of said mining claim could be ascertained and determined by a court of competent jurisdiction. Appellants thereafter instituted this suit against appellees, claiming the title and right of possession of 6.14 acres of land embraced within the said mining claim, Copper Chief, fully describing said 6.14 acres, as a part of a certain mining claim of the name of "Equator," claimed by appellants. It appears from the record that on January 1, 1884, the appellants F. E. Jordan, E. A. Jordan, and W. A. Jordan located the mining claim Equator; that the 6.14 acres of land in dispute is within the exterior limits of said mining claim; that said parties performed all the necessary work and acts to entitle them to the possession of said Equator mining claim from the date of the location thereof until March, 1888, when they conveyed an undivided interest in said mining claim to the appellant W. S. Head; that the appellants, from the date of said conveyance to Head, have had possession of said mining claim, and performed all the acts and things necessary and proper to be done to hold said mining claim, up to the date when this suit was instituted; that the 6.14 acres in controversy, embraced within both of said mining claims,—viz., Copper Chief and Equator,—is ground formerly embraced within a certain mining claim called the Nellie, which was located in January, 1882; that the Copper Chief mining claim was located in October, 1883, by the appellee W. H. Ferguson. If the Nellie was a valid location, the ground embraced therein was not open for relocation until January 1, 1884, and the location of the Copper Chief in October, 1883, was void as to all parts thereof embraced in the Nellie. The 6.14 acres of land in dispute are embraced within what was the Nellie mining claim, and also within the Equator and Copper Chief; and if appellants' mining claim, the Equator, is a valid mining claim they should have judgment therefor. The complaint contained substantially the foregoing facts, and, in

addition thereto, facts that showed the Nellie to be a valid
mining claim, and that the Equator was a valid mining claim.

These facts having been established on the trial, and the
judgment being for the defendants, we are forced to examine
the record, to see if any errors were committed upon the trial
that would make it necessary to reverse the judgment. An
examination of the record discloses the fact that, on the trial,
defendants were permitted to contradict witnesses for plain-
tiffs on matters irrelevant and immaterial; to prove that a
witness for plaintiffs was very friendly to a certain large
mining company, which was not a party to the suit; to show
that certain witnesses for the plaintiffs had located the same
ground in controversy in 1883, and to put the location notice
of said claim in evidence. Errors of the character above
enumerated are too numerous in the record to be mentioned
individually. They were sufficient to prejudice the jury
against the plaintiffs, and to require a reversal of the judg-
ment. 1 Greenleaf on Evidence, 11th ed., pars. 449-462; 1
Rice on Evidence, p. 588f; *People* v. *Bell,* 53 Cal. 119;
*Harper* v. *Railroad Co.,* 47 Mo. 567, 4 Am. Rep. 353.

The only other error assigned that we will notice relates to
the instructions given and refused. Plaintiff offered the fol-
lowing instruction, viz.: ''No. 1. If the jury believe from the
evidence that on the first day of January, 1884, the ground
in controversy was not embraced within the boundaries of
any valid location, *or not in the actual possession of one en-
titled thereto,* and that on said day, F. E. Jordan, for him-
self and his co-locators, entered upon the same, and located
the same in the Equator location, marking the boundaries of
said Equator lode by placing stone monuments at the point
of discovery, and also at each end and each corner thereof,
so that the boundaries thereof could be readily traced on the
ground, and placed a notice thereon containing the names of
the locators, the date of the location, and such a description
of the claim located, by reference to some natural object or
permanent monument, as would identify the claim, and within
sixty days thereafter caused said notice to be recorded in the
recorder's office of said county of Yavapai, where said claim
is situate, and since that time plaintiffs have done, or caused
to be done, and performed, at least $100 worth of labor or
improvements thereon during each year, then your verdict

should be for the plaintiffs." Plaintiffs presented said instruction to the court, and asked that it be given without the part in italics. The court modified it by inserting the part in italics, and, as thus modified, gave it, to which plaintiffs excepted. It is shown by the record that there was evidence before the jury that one of the defendants located the Copper Chief in October, 1883. Hence, there was evidence from which the jury might have found that, at the time plaintiff F. E. Jordan located the Equator, the ground embraced in the Equator was in the actual possession of another. They were instructed that, if they should so find, only one other thing was necessary for them to determine in order that their verdict should be for defendants, and that was, that the one in possession was entitled thereto. A mining claim is acquired by the performance of certain specific acts, and there can be no possession of such a claim unless the party has performed those acts. The acts referred to, when performed, constitute a location. It requires a location of a mining claim to give the right of possession. Hence, it is apparent that by the modification of said instruction a question of law was submitted to the jury. *Horswell* v. *Ruiz*, 67 Cal. 111, 7 Pac. 197; *Belk* v. *Meagher*, 104 U. S. 284; *Hopkins* v. *Noyes*, 4 Mont. 550, 2 Pac. 280.

Other instructions were given that are subject to similar criticisms as the one given, but it is not necessary that we should single them out and point out the errors contained in them. For the errors mentioned the judgment must be reversed and the cause remanded for a new trial, and it is so ordered.

BAKER, C. J.—I agree that the judgment of the lower court ought to be reversed.

Sloan, J., concurs in the judgment.

Hawkins, J., did not take part in this case.