THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

ELSIE BRAGONIER, Admx.

*Filed at Springfield May 14, 1886.*

1. NEGLIGENCE—MASTER AND SERVANT—*corresponding duties as to proper condition of machinery used.* It is primarily the duty of a railway company to provide good, safe and proper machinery, so far as reasonable skill and diligence can construct it; but when that duty has once been performed, it is a duty devolving upon the servants operating it, to observe that it is in repair and good working order, and report to the company when it is not in such condition. There are many cogent reasons why both the company and the employes shall be held to a strict performance of their respective duties to each other and the public in this respect.

2. SAME—*duty of brakemen on railway trains to see that the brakes are in proper working condition.* The law imposing a high degree of care upon all employes of railway companies engaged in the running of their trains, to insure the safety of those in the service, makes it the duty of a brakeman on a railway train to see that the brakes on the cars are always in proper order for working, and report all defects therein to the company; and if he suffers a personal injury in consequence of the neglect to perform that duty, no recovery can be had against his employer.

3. The fact that a railway company may have employed car inspectors, at certain local stations, to inspect cars, will not relieve brakemen using the same, from their duty of inspecting that part of the machinery they are

expected to handle, and reporting defects to the company. Their duty in this respect remains as imperative as if they were the sole inspectors. It is not in the power of the company to relieve its brakemen of this duty.

4. So an instruction which holds that a servant in the employ of a railroad company may be relieved from the observance of that care the law exacts of him, is pernicious in the extreme.

5. And when neither the law nor any rule of a railway company makes it the duty of a brakeman on a freight train to inspect the cars, and, generally, as to their construction, strength of wheels or axles or timbers used in their manufacture, it is not proper to introduce the question of such duty into the case by an instruction, in a suit for an injury to the brakeman.

6. Same—*neglect of duty by one servant, as justifying such neglect on the part of another.* In an action against a railway company to recover for the death of a brakeman, caused by an injury received in attempting to couple a freight car, in consequence of a defect in the brake, the court instructed the jury, that if they believed, from the evidence, "that the printed rule of the company requiring train men to examine their trains, was habitually disregarded by the company itself,—that is, if the officers of the company having charge of the freight trains habitually caused such trains to be made up, and sent out * * * after being made up, without affording brakemen an opportunity to examine the train,—such fact, if proven, would cause the rule to lose its authority over the brakemen,—in other words, the rule must be obeyed by the master as well as by the servant, or it ceases to be operative as to both:" *Held*, that the instruction did not have any proper application to the case, the rule being intended only for conductors and train men.

7. Where a rule of a railway company imposes no higher duty upon a brakeman, in regard to the inspection of that part of the machinery of cars he is required to use, than the law requires of him, an omission of duty by other employes of the company will not relieve him from the duties and obligation the law imposes.

8. So in an action against a railway company to recover for a personal injury to a brakeman, the question of whose negligence is involved, growing out of his neglect of duty, evidence that a good many other brakemen omitted to observe the same duty, is inadmissible, it furnishing no excuse for a like omission on the part of the brakeman receiving the injury.

9. Evidence—*as to usual duties of brakemen, as relating to question of negligence.* In an action involving the question of a brakeman's negligence in his failure to examine the brakes on a freight car, either party has the right to prove what were the customary and usual duties of brakemen as to the inspection of the brakes, and it is error to refuse such evidence.

10. Instructions —*should relate to matters in issue.* In an action against a railway company to recover for an injury to a brakeman, the ground

of liability alleged was, that the ratchet wheel or the dog on a freight car, or both of them, were out of repair, and no other defect was alleged or shown. The court instructed the jury that there was an undertaking by the company, with its brakemen, to exercise reasonable care to furnish safe and suitable cars to work with: *Held,* that while this was good law, it had nothing to do with the case, and was calculated to mislead. It should have directed the attention of the jury to the defects stated in the declaration.

11. So, too, in the same case, the court instructed the jury, that if the brakeman had no notice, or by the exercise of reasonable care could have had no notice, "of that dangerous and defective condition of the car," etc.: *Held,* that the instruction was erroneous in calling the attention of the jury to the "dangerous and defective condition of the car," there being no complaint as to the *car* itself, its construction or repair. Attention should have been called only to the ratchet wheel and dog, the condition of which, it was alleged, made the brake inefficient.

12. Same—*assuming facts not proven.* An instruction which assumes there is evidence of a fact, when there is none even tending to show such fact, is calculated to mislead, and is erroneous.

Appeal from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of DeWitt county; the Hon. Lyman Lacey, Judge, presiding.

Messrs. Williams & Capen, and Messrs. Fifer & Phillips, for the appellant:

A person who undertakes a dangerous employment, undertakes to exercise such care and caution for his own safety as a reasonably prudent man should exercise in that employment. *Clark* v. *Railroad Co.* 92 Ill. 43; *Pennsylvania Co.* v. *Lynch,* 90 id. 333; *Railroad Co.* v. *Black,* 88 id. 112; *Richardson* v. *Cooper,* id. 270.

It is the right and duty of a railroad corporation to make reasonable rules and regulations for conducting its business, both as to its employes and others doing business with it, and its employes are bound by such reasonable rules and regulations; and what is a reasonable rule, is a matter of law, for the court. *Woolsey* v. *Railroad Co.* 33 Ohio St. 227; *Railroad Co.* v. *Whittemore,* 43 Ill. 420.

If a person comes to an injury by his own carelessness, he can not recover. *Packing Co.* v. *Egan*, 86 Ill. 253; *Railroad Co.* v. *Rush*, 84 id. 570.

It is the duty of a brakeman to know that the brakes on his train are in order. *Railroad Co.* v. *Bragonier*, 11 Bradw. 516; *Railroad Co.* v. *Jewell*, 46 Ill. 99; *Railroad Co.* v. *Eddy*, 72 id. 138; *Railroad Co.* v. *Jackson*, 55 id. 492; *Wonder* v. *Railroad Co.* 32 Md. 411; *Railroad Co.* v. *Barber*, 5 Ohio St. 541; *Davis* v. *Railroad Co.* 20 Mich. 105; Wood on Master and Servant, secs. 333, 363.

Deceased came to his death by his own carelessness, or by failing to observe a regulation of the company. If a servant is injured in consequence of his own breach of duty, he can not recover.

An employe can not recover damages of his employer for an injury received by the carelessness of a co-employe in the same line of employment. *Railroad Co.* v. *Murphy*, 53 Ill. 336; *Valtez* v. *Railway Co.* 85 id. 500; *Railroad Co.* v. *Rush*, 84 id. 570; *Railroad Co.* v. *Keen*, 72 id. 512.

If the master furnishes reasonable facilities for keeping his machinery in repair, and a sufficient number of competent persons to attend to it, and is free from personal neglect, he is not chargeable with the consequence of this negligence. *Smith* v. *Potter*, 46 Mich. 258; *Railroad Co.* v. *Love*, 10 Ind. 554; *Railroad Co.* v. *Webb*, 12 Ohio St. 475; *McGatrick* v. *Mason*, 4 id. 566; *Railroad Co.* v. *Barber*, 5 id. 541; *Patterson* v. *Wallace*, 1 McQueen, 748.

If the injured servant, by a faithful performance of his duties, would have had the same means of knowledge as his master, he can not recover. *Pennsylvania Co.* v. *Hankey*, 93 Ill. 580; *Frazier* v. *Railroad Co.* 38 Pa. St. 104; *Wright* v. *Railroad Co.* 25 N. Y. 562; *Buzzell* v. *Manufacturing Co.* 48 Me. 113; *Railroad Co.* v. *Barber*, 5 Ohio St. 541; *Railroad Co.* v. *Smithson*, 45 Mich. 212.

Brakemen and car repairers are fellow-servants, so far as ascertaining patent defects on the top of the brake-rods is concerned; and if the railroad company has a sufficient number of competent car repairers, and both they and the brakemen fail to discover a patent defect that could only be discovered by an examination of the top of the train, a brakeman can not recover on account of an injury arising from such defect. *Railroad Co.* v. *Jewell*, 46 Ill. 99; *Railway Co.* v. *Eddy*, 72 id. 138; *Railroad Co.* v. *Webb*, 12 Ohio St. 475.

Mr. WILLIAM E. HUGHES, for the appellee:

It is the duty of the master to furnish reasonably safe cars, to continuously inspect them, and repair them when necessary to the safety of the men working with them. *Railroad Co.* v. *Jackson*, 55 Ill. 492; *Railroad Co.* v. *Ingraham*, 77 id. 309.

The master is bound to exercise reasonable care to prevent accidents to his workmen. He is bound to furnish them with suitable machinery, and see that it is properly kept in repair. *Weemes* v. *Matthewson*, 4 McQuine, 215; *Pelthome* v. *England*, (L. R.) 2 B. 46; *Warner* v. *Railroad Co.* 39 N. Y. 468; *Northcourt* v. *Bacheldor*, 111 Mass. 322.

It is his duty to guard against defects that may arise from use. *Chapman* v. *Railroad Co.* 55 N. Y. 579; *Railroad Co.* v. *Ingraham*, 77 Ill. 309; *Railroad Co.* v. *Flanigan*, id. 365.

Knowledge on the part of the servant, of the defect and danger, will not relieve the master. *Snow* v. *Railroad Co.* 8 Allen, 441; *Reed* v. *Northfield*, 13 Pick. 98; *Smith* v. *Lowell*, 6 Allen, 39.

A master can not escape liability to a servant by printing and publishing rules which the master himself does not observe and obey. Wood on Master and Servant, sec. 401.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This suit was brought by Elsie Bragonier, administratrix of the estate of William Bragonier, deceased, against the Chicago and Alton Railroad Company, to recover damages resulting to the next of kin on account of the death of the intestate, which it is alleged was caused by the negligent conduct of defendant. There have been three trials of the cause in the circuit court, in each of which plaintiff succeeded in obtaining a judgment against defendant. The first and second judgments were reversed by the Appellate Court for the Second District, on the appeal of defendant, but the last one was affirmed, and defendant brings the cause to this court on its further appeal.

Of course there can be no controversy in this court as to the facts of the case. It will be understood the trial court and the Appellate Court have found every fact the evidence tends to establish, in favor of plaintiff, and the finding of such facts by the latter court, under the statute, is conclusive in this court.

The intestate had been, and was at the time of receiving the injury which caused his death, a brakeman on defendant's railroad, and was so employed at the time. On the morning of the 8th of August, 1879, the intestate was one of the number that were designated by the proper officers to go upon what is called a "wild" freight train, from Roodhouse to St. Louis. The usual number of men were assigned to the train, and they were directed to leave a few minutes after two o'clock on that morning, which they did. After leaving Roodhouse, going south, the first stopping place was the Chicago, Burlington and Quincy railroad crossing, about one-half of a mile from Whitehall. The train then went on to the yards at Whitehall, where it was intended some cars should be left. In doing that work the train was separated, and the car that injured the intestate was set back on the main line. At that

point there was a slight down grade, and to prevent this car from moving forward of its own weight, one of the brakemen "chucked" it. After the cars had been set off, the engineer moved back on the main line, that he might hitch to this particular car. It was the duty of the intestate to make the coupling, which he undertook to do. When the engine moved back to this car, the coupling link failed to enter the bumper, and so the coupling was not made. The striking of the engine, however, knocked the car back some distance, perhaps twenty or thirty feet. It seems the link did not enter the draw-head because it had not been adjusted to the proper height. Perceiving the difficulty, the intestate undertook to change the link into another pocket, so that the coupling could be made. While engaged in that work, the car that had been pushed back by the concussion moved forward again of its own weight, and struck him, inflicting the fatal injury. It is averred in one count of the declaration, the car that caused the injury was unfit for use, in that the brake ratchet was broken and lost, in consequence of which the car could not be controlled; that intestate did not know of such defect, and that defendant knew, or by the exercise of a high degree of care might have known, of the existence of such defect in time to have had the same repaired. In another count it is averred, the ratchet wheel was so imperfectly fitted and constructed, the dog would not fall in place. The original and amended declaration contains quite a number of counts, in all of which some defect in the ratchet, or dog, or perhaps both of them, is averred, but no other defect in the car is stated. In most, if not all, of the counts, it is averred, by reason of the defect in the ratchet wheel the brake could not be set, and consequently the car was not subject to control.

At the trial, two questions arose in the case as made by the declaration: First, was plaintiff himself guilty of negligence, or, what is the same thing, did he observe ordinary care for his personal safety; and second, was defendant guilty of

negligence in regard to that which caused the injury. It is conceded the facts are within the province of the jury to find, and the law applicable to the facts is to be declared by the court. It is for this reason, if the court misdirects the jury as to the law applicable to the facts, it is error. Applying these obvious and well understood principles, there is manifest error in this record.

Before coming to consider some of the propositions of law which the court stated to the jury as fixing the liability of defendant for the death of plaintiff's intestate, it will be necessary to recur to some of the principal facts which the evidence tends to establish, and which must therefore be regarded as having been so found. The car that was the cause of the accident did not belong to defendant. It was a "Blue Line" car, and belonged to the West Wisconsin Railroad Company. It came on defendant's road at Joliet, on the night of the 2d of August, and reached Bloomington at 3:25 o'clock the next morning. Left Bloomington at 8:40 o'clock the same day, and went to Jacksonville. It laid there until the afternoon of August the 7th, when it was taken to Roodhouse, and from there it was taken to Jerseyville on the 8th. It left Roodhouse, after having remained there about nine hours, at 2:18 A. M., on the morning of the 8th, for Jerseyville, and in less than an hour thereafter the intestate received the injury from which he died. It appears the company had car inspectors on its line of road over which the car passed, at Joliet, Dwight, Bloomington and Roodhouse, but not at any other stations. The duties of car inspectors are not prescribed by any written rules, but the duties which they are expected to perform were sufficiently proved both by plaintiff and defendant. While it is their duty to make reasonably thorough examinations of all cars that come to the stations where they are located, their examination in the first instance is most generally confined to the running and hauling gear of the cars, and unless their attention is called to a defect in the car by the train

men, they seldom go on top of a car to make examination.  Of course, any defects that can be discovered must be reported. It is expected that all defects that can only be discovered by going on the top of the cars will be reported to them by the train men.  Where the principal shops are located the most thorough examination of cars is made by car inspectors.  It is not practicable to make a close examination of the ratchet wheel and dog on freight cars without going upon the top of the car.

Rule 58, given in evidence, is in relation to the duties of conductors and train men.  A copy of it is placed in the hands of all employes that have anything to do with the running of trains.  It provides : "Conductors and train men must be in attendance at the trains one hour before leaving time, and know personally that everything connected with their trains is in perfect order."  Another rule makes it the duty of every employe to exercise the utmost caution to avoid injury to himself or his fellows, especially in the switching or other movements of cars or trains.  While these rules enacted by the company exact a high degree of vigilance and watchful care of all train men, still they impose no higher duties than the law itself would impose upon them in the absence of all written or printed rules.  Such written rules are important, as they make known definitely to all such employes their specific duties.  It is the special duty of a brakeman to assist in the control and management of trains.  The stopping of heavy freight trains is done largely by the use of the brakes.  It is known to every brakeman that it is his duty to manage the brakes, and in that way to assist in stopping and otherwise control the running of these heavy freight trains.  His duty in that respect can only be performed by means of efficient brakes.  On freight trains brakes are, and can be, put on and let off only by train men employed for that purpose.  While they have other duties to perform, managing of the brakes on freight trains is amongst the most important.  As brakemen .

are expected on such trains to constantly use the brakes, it becomes their reasonable duty to see that they are always in order for working, otherwise there would be no safety for the service. It is as much the duty of a brakeman to observe that the brakes which he is expected to handle are in working order, as it is that of the engine driver to see that his engine is in order for use. All employes in these respects must be held to a high degree of care to insure any safety at all in railroad service. This is not declaring any new doctrine. It is simply the application of well settled principles, and nothing more. In *Illinois Central Railroad Co.* v. *Jewell*, 46 Ill. 99, it was held it was the duty of a brakeman to see that the brake was in a fit condition for use, and the company was not to suffer for the neglect of such duty. It was said, the condition of the brake was a matter under the special care of the brakeman, and it was his business at all times to see that it was in a fit condition for use, and report defects to the company. The same reasonable rule was declared in *Toledo, Wabash and Western Railroad Co.* v. *Eddy*, 72 Ill. 138. The defect insisted upon in this latter case was in the ladder attached to the car for the use of employes. It was said the evidence showed plaintiff had been in the constant use of the ladder, and it was therefore his duty to know that it was in repair, and if not, to have reported it to the proper person, for repair. It was for that reason held, that an instruction that stated it is an implied contract by the company with their servants that they will keep their road and apparatus in safe repair, and in such condition that all of their machinery in operating the road can be used with safety to their employes, was not accurate, under the evidence. The rule of law undoubtedly is, that it is primarily the duty of the company to provide good, safe and proper machinery, so far as reasonable skill and diligence can construct it; but when that duty has been once performed, it is a duty devolving on the servants operating it, to observe that it is in repair, or report it to the com-

pany. There is no reason why employes should be relieved from duties the law has heretofore imposed upon them, nor should their obligation to be watchful be relaxed. There are many cogent reasons why both the company and employes should be held to a strict performance of their respective duties and obligations to each other and to the public.

In view of these well understood principles, and in view of the evidence, some of the instructions asked by plaintiff ought not to have been given. Many of them were highly calculated to mislead the jury as to the law applicable to the facts. The seventeenth instruction of the series is radically wrong. It not only does not state the law accurately, but it was calculated to mislead the jury in their investigation of the case. It is as follows:

"That if the jury believe, from the evidence, that the printed rules of the company requiring train men to examine their trains were habitually disregarded by the company itself,— that is, if the officers of the company having charge of the freight trains habitually caused such trains to be made up, and sent out on the company's business after being made up, without affording brakemen an opportunity to examine the train,—such fact, if proven, would cause the rule to lose its authority over the brakemen,—in other words, the rule must be obeyed by the master as well as by the servant, or it ceases to be operative as to both."

This instruction, on its face, is so obviously erroneous and vicious in the propositions it states, it would seem to be wholly unnecessary to remark upon it. It assumes there is evidence that the officers of the company having charge of freight trains habitually caused such trains to be made up, and sent out after being so made up, without affording brakemen an opportunity to examine them. This is not the fact. There is not a particle of evidence in this record that shows, or even tends to show, the officers "habitually caused" freight trains to be made up and sent out without affording brakemen an

opportunity to examine them. But the conclusion stated does not follow from the alleged misconduct of the officers,— that is, the "rule must be obeyed by the master as well as by the servant, or it ceases to be operative as to both." Exactly what is meant by this proposition is not readily understood. The rule was never intended to have any application to the management of the company. It relates exclusively to conductors and train men. If it means that negligent conduct on the part of officers whose duty it is to make up and send out freight trains would relieve the company from the obvious duty to cause its cars to be inspected, nothing could be more erroneous or hurtful to railroad service. As before stated, the rule imposes no higher duty upon brakemen than the law itself imposes in regard to the inspection of that part of the machinery of cars which they are required to use in performing their customary work, and it would be a most dangerous doctrine to hold that the omission of duty by other employes would relieve them from the duties and obligations the law exacts of them. The public exigency requires of all railroad employes a high degree of care in the running and management of trains, and the omission of duty by one servant can not excuse another from his obligation to observe care,—otherwise railroad service would be most dangerous both to freight and passenger traffic.

In this connection it is proper to remark, the objection taken by defendant to the evidence permitted to go to the jury, that some, and, perhaps, a good many, brakemen omitted to observe rule 58, should have been sustained. That testimony was clearly inadmissible. It can not be that the omission by one servant to perform his duty would afford the slightest excuse for the same negligent conduct in another employe. No matter how many other brakemen may have neglected to observe the rule, it was the duty of the intestate to conform to it as near as practicable, and any instruction that advised the jury he might be excused from the perform-

ance of his duty in that respect, was positively erroneous. It may also be further remarked in this same connection, that while plaintiff's counsel disclaimed any purpose to prove what were the customary or usual duties of brakemen on defendant's road, he was permitted to and did prove what was termed the "work" of brakemen. The word "work," in the sense used, could mean nothing else than "duty." As used, the words are convertible terms, and obviously mean the same thing. Either party had the right to prove what were the customary and usual duties of brakemen, as to the inspection of the brakes, but that privilege was denied, by the rulings of the court, to defendant. In this there was error.

The second instruction of the series given for plaintiff is also objectionable, both as to the phraseology and as to the propositions of law it assumes to state. It is as follows:

"That where a railroad company undertakes the work of inspecting its cars, and is shown, by the evidence, to have intrusted that work to other servants than its brakemen, a brakeman employed by that railroad company, who goes upon one of the company's trains to work, has a right to expect that the cars with which he is to work are safe and suitable cars wherewith to work, and that the company employing him has exercised a reasonable degree of care to ascertain and remedy any defects arising from want of repair, which would be discovered by a reasonably careful inspection, if such defects, for want of repair, will make the cars unsafe to the life and limbs of the brakeman while he is doing his work in a reasonably prudent manner, and using ordinary care for his own personal safety, and to ascertain any defects in the cars caused by want of repairs, if any."

This instruction assumes it is shown, from the evidence, defendant had intrusted the work of inspecting its cars, to "other servants than its brakemen." Whatever defendant may have done in that regard, was a question of fact for the jury, and not a fact to be stated by the court. It makes the

impression on the mind, it is shown by the evidence in this case, defendant *had* intrusted the work of inspecting its cars to other servants than its brakemen, and in that respect it was erroneous and misleading. But a worse feature of this instruction is, it implies, by its terms, that when a railroad company employs local inspectors of its cars at particular stations, it thereby relieves all brakemen from the duty to observe whether the brakes on the cars they may be using, are in repair and fit for present use. If this is not its meaning, it can have no possible application to the facts of the case. That this is its evident meaning, is clear from what follows, when it is said such brakeman "has a right to expect that the cars with which he is to work are safe and suitable wherewith to work," and that the inspection has been done with such care that he may enter upon the work of braking without making any examination for himself. The principle sought to be stated could not be regarded as law in any event, unless it had been added when the company had intrusted the *exclusive* work of inspecting its cars to other servants than brakemen. That, however, is not this case. The fact defendant may have employed and did employ car inspectors at certain stations, did not relieve brakemen from the duty to observe the rule in regard to inspecting that part of the machinery they are expected to handle. The duty in that respect is as imperative as if they were the sole inspectors. It is simply laying the same duty upon other servants as an additional guaranty the work may be faithfully and certainly done. Aside from this view, these car inspectors are local, at stations wide apart, and it is therefore impracticable for them to inspect brakes and other machinery at every station, as the safety of the service requires shall be done. But it is apprehended it is not in the power of the company to relieve brakemen from the obligation to observe care in doing the work particularly allotted to them, by rule or otherwise. The law exacts of every employe the observance of reasonable care and diligence

in the work assigned to him, and that duty he can not be relieved from, by his employer or otherwise. That would be to permit the employer to allow negligence in the servant, which the law will not tolerate under any circumstances. Any instruction that holds that a servant in the employ of a railroad company may be relieved from the observance of that care the law exacts of him, is pernicious in the extreme.

The third instruction assumes, in direct terms, "such inspection is taken by the master,"—that is, the inspection of its cars, in this case,—and for that and other obvious reasons is faulty, and should not have been given.

In many of the instructions the jury were told it is an undertaking of a railroad company with its brakemen, to exercise reasonable care to furnish safe and suitable cars to work with. That is undoubtedly the law, but the doctrine stated has nothing whatever to do with the present case, and, under the evidence, was calculated to mislead the jury. It is not pretended the car that caused the death of the intestate was faulty in its original construction. The only ground of liability, as stated in the declaration, is, that the ratchet wheel and the dog,—one or both of them,—were out of order. No other defect is alleged to exist in the car; nor does the proof show it was otherwise imperfect in its construction, or that it was in any way out of repair. The attention of the jury should have been directed to the defects stated in the declaration, and not, generally, to the condition of the car, about which no controversy existed. This manner of instructing the jury was condemned by this court in *Toledo, Wabash and Western Railroad Co.* v. *Eddy, supra.*

The giving of the seventh of plaintiff's instructions makes some further discussion necessary, and will warrant an allusion to some facts in the case not previously stated. By it the jury were told, in substance, if they believe, from the evidence, it was no part of the duty of brakemen to inspect freight cars, and to ascertain defects making the same un-

safe, then it was the duty of defendant to provide some method of inspecting such cars, whereby such defects could, by the exercise of ordinary care, be ascertained and remedied, and the omission to do so would render the company liable for an injury to a brakeman using the same with ordinary care. If this charge simply means, the jury may find it is no part of the duty of a brakeman to inspect cars, generally, as to their construction, the strength of the wheels or axles or timbers used in constructing them, undoubtedly the jury might so find, for no one pretends it was any part of the duty of a brakeman to make any such general inspection of cars. But whether it was the duty of brakemen to make a general inspection of freight cars, is not now and was not a question on the trial, and it was error to introduce it into this case, by instruction or by argument. Neither rule 58 nor the law requires any such duties of brakemen. What the rule and what the law do require of them is, that they shall observe whether the machinery they are to handle is in order, and reasonably fit for use; and if this instruction means, the jury might believe, from the evidence, brakemen were not bound to observe their duty in that respect, it was faulty, and should not have been given.

The concluding sentence of the instruction is also calculated to and no doubt did mislead the jury. It says: "If he (intestate) had no notice, or by the exercise of reasonable care could have had no notice, of that dangerous and defective condition of the car." Here again a vice, common to many of the instructions given for plaintiff, is apparent. ' What reason was there for directing the attention of the jury to "that dangerous and defective condition of the car?" No complaint had been made as to the *car* itself. So far as this evidence discloses, it was well constructed, and in repair. Why was not the attention of the jury directed alone to the ratchet wheel and the dog, that rendered the brake inefficient? No other ground of liability was stated in the declaration, or

even claimed by the proof. It is simply absurd to direct the jury to inquire whether the intestate could, by the exercise of ordinary care, have discovered the condition of the ratchet wheel and dog, if they were in the condition the witnesses say they were. The slightest examination would have disclosed their exact condition, and the law imposed upon him the duty to make examination with reasonable care. The brakeman employed on the train with the intestate discovered its condition as soon as he touched the brake. Had the intestate tried the brake at any time, he would have learned, as his fellow-brakeman did, it was out of repair. Surely, by the exercise of ordinary care he could have discovered its condition, and charging the jury to inquire whether he could have ascertained its condition by the use of ordinary care, is simply to afford them a pretext to find the intestate did not know the condition of the brake, that they might find a verdict for plaintiff.

The great number of instructions given on behalf of both plaintiff and defendant, renders it impracticable to comment on all of them, without extending this opinion to a most unreasonable length. Enough has been said to indicate to the trial court the views entertained by this court as to the law applicable to the facts, and on another trial the instructions should be made to conform, as nearly as practicable, to the law, as stated in this opinion.

The judgments of the Appellate and circuit courts will be reversed, and the cause remanded to the circuit court.

*Judgment reversed.*

Mulkey, C. J., Shope and Magruder, JJ., do not concur in the opinion in this case.