# N. J. Ames and I. C. Woodrow v. John Quigley.

1. MASTER AND SERVANT — *Defective Machinery — When Servant Assumes Risk of.*—An employe can not recover for an injury suffered in the course of the business about which he is employed, from defective machinery used therein, if he continues his work after he has knowledge of the defect. Upon becoming aware of the defective condition of the machinery he should desist from his employment, and if he does not do so and chooses to continue he is deemed to have assumed the risks of such defects, at least when he has not been induced by his employer to believe that a change will be made, and has not plainly objected.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Tazewell County; the Hon. THOMAS M. SHAW, Judge, presiding. Heard in this court at the November term, 1897. Reversed and remanded. Opinion filed June 3, 1898.

T. N. GREEN and BEACH & HODNETT, attorneys for appellants.

W. H. AMBROSE and W. R. CURRAN, attorneys for appellee.

MR. JUSTICE GLENN DELIVERED THE OPINION OF THE COURT.

Appellee grounds his right of recovery in this case upon the third count of the declaration which is as follows:

Third count: That defendants were livery stable keepers and employed plaintiff as a hostler, and that it was the duty of defendants to keep and maintain in good safe repair the floor of said livery barn, and the floors of each of the stalls in said livery barn, so as to render such floors safe and proper to bear the weight of such horses, and sufficient in thickness, repair and strength so such horses would not break through said floors when covered with straw bedding at night, and maintain and keep said floors of said stalls so as to be safe at all times for such hostler to go into said stalls either in daylight or in the dark, or by artificial light, to feed, etc., such horses standing therein. Yet the defendants, well knowing the premises, etc., and not regarding

Ames v. Quigley.

their duty to plaintiff, wrongfully, negligently and knowingly permitted the floors of said stalls in said barn to become and remain worn, weak and thin and out of repair and unsafe and improper to bear the weight of horses, and unsafe in thickness and strength to prevent horses from breaking through said floor when covered with straw bedding, and unsafe for such hostler to go in said stalls either in daylight or in the dark, or by artificial light, to feed, clean, handle and care for said horses, while standing in said stalls. By means whereof plaintiff on the date aforesaid, while engaged as such hostler in said barn by artificial light in the night time, passing into one of said stalls the floor of which was covered with straw bedding, to feed one of said horses therein, without fault on his part and by reason of such wrongful neglect of said defendants, necessarily and unavoidably tripped and stumbled and fell upon and against one of said weak, worn, broken plank in said floor in said stall covered with said straw bedding, under the feet of a horse standing in said stall and was thereby bruised and injured, and said horse thereby violently kicked, bruised and trampled upon and injured plaintiff, and thereby the collar bone of plaintiff was broken, etc., became sick, etc., and was prevented from attending to business, etc. Paid out $200 in endeavoring to be cured, etc., to plaintiff's damage $3,000.

The only witness testifying upon the trial was appellee, who was sworn on his own behalf; and his physician, who testified as to the character of the injuries appellee sustained, and one Ryan, who testified to seeing the stall and the hole appellee stepped into soon after the injury. Appellants introduced no testimony."

It appears from the evidence that appellants were the owners of a livery barn in Delevan, Tazewell county; that they, on the 20th day of September, 1895, employed appellee to work for them as a hostler in their stable. A few minutes before five o'clock of the morning of the 28th of March, 1896, appellee went to the stable to feed the horses. He first lighted up the stable with three lanterns, distributed

in different parts of the barn, so he could see where to go to feed. He then went to the stall where the horse stood that inflicted upon him the injuries complained of, and cleaned the cobs out of the trough, after which he got some corn and returned to the same stall, and as he entered the stall on the left-hand side of the horse, placing his hand on the horse and speaking to him, at this instant he stepped with his left foot into a hole, going through to his crotch. The corn he had in his arm fell around the horse's front feet, and he, thinking he was going to hit him, grabbed the horse by the legs and hallooed, and after that he did not know anything until he was picked out between the horse's hind legs. He crawled out on the floor; after lying there a few minutes he went into the office and telephoned Mr. Ames to come to his assistance. Mr. Ames sent for a physician and had appellee's wounds treated. His collar bone was broken, he had a wound on his left eye, and two of his ribs were sore. For the injuries the appellee recovered a judgment against appellant for $771.

There were in appellant's livery stable at the time appellee received his injuries, eleven horses, boarders and all, two carriages and two surreys. Horses and carriages were kept for hire. Appellee commenced going to this stable from the 10th to the 15th of July, 1895, and was acquainted with it until he went to work for appellants, September 20, 1895. He did substantially all the work about the stable except the feeding at noon, which was done by the appellant Woodrow.

The stalls in the front part of the stable were box-stalls, with plank floors, and those in the rear had dirt floors. Those with plank floors were originally laid with two-inch plank, but were so worn that they were only three-quarters of an inch or an inch thick. They had been patched with old inch boards, which were also worn. Appellee, in testifying, says he drew Mr. Ames' attention to the condition of the floor, putting his foot on the board and springing it between the joist, and saying, "Nick, that is too weak a place there for your black horses to stand." He said nothing; that was the "end of it." He says he called Mr. Ames'

Ames v. Quigley.

attention to the dangerous condition of the stall two or three times. Another time, he says, he drew his attention three or four times to the dangerous condition of the stalls, that they were dangerously weak. He says he did not draw his attention to the condition of the stall in which he was hurt. He says he regarded this as one of the best stalls in the stable; it was better than the stalls on the east side. All the stalls, he says, were dangerously weak; that they were all about the same—dangerously weak, and he told Mr. Ames so; that the first time he told Mr. Ames about the condition of the floors was about six weeks before he got hurt, and the last time about two weeks. Mr. Woodrow might have heard what he said to Mr. Ames; he was about the barn. He says he brought the horse that was in the stall where he received the injuries, from a dirt-floor stall in the rear of the stable, where there were five or six dirt-floor stalls, because he was an early horse out, and he would be handy. He did this some ten days before he was injured. Among the duties the appellee performed was to clean out the stalls in the morning that had been used the night before, and sweep them, and in the evening to bed them with straw.

It is suggested by counsel for appellee that when appellee spoke in his testimony about the floors in the stalls being dangerously weak, he meant they were dangerously weak for horses. If they were dangerously weak for a horse to stand upon them, they would be more dangerously weak with a man and a horse standing upon them.

It seems clear from the evidence in this case that the floor in the box-stall of appellant's livery stable, in which appellee received the injury complained of, was in a dangerous condition; that appellee, as well as appellants, knew of this condition at the time appellee sustained his injuries. He knew of the hazards to which he was exposed on account of the condition of the stall. He cleaned it out and swept it daily. The same rule applies in this kind of a case as does in a case where an employe uses knowingly defective machinery and is injured.

" The doctrine upon this subject appears to be that an employe can not recover for an injury suffered in the course of the business about which he is employed, from defective machinery used therein after he had knowledge of the defect, and continued his work; it being held that, upon becoming aware of the defective condition of such machinery he should desist from his employment; but if he does not do so and chooses to continue on, he is deemed to have assumed the risks of such defects, at least when he has not been induced by his employer to believe that a change would be made and has not plainly objected." Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; Chicago & A. R. R. Co. v. Munroe, 85 Ill. 25; Pennsylvania Co. v. Lynch, 90 Ill. 333; Simmons v. Chicago & T. R. R. Co., 110 Ill. 340; Chicago & A. R. R. Co. v. Bragonier, Adm'x, 119 Ill. 51. There is no evidence in the record, or even any claim upon the part of appellee, that appellants promised to make any change in respect of the defects complained of, or that he objected to continue his work, and did so under any sort of compulsion.

The view we have taken of this case makes it unnecessary to enter upon a discussion of the instructions, either given on behalf of appellee or asked and refused on behalf of appellants.

We hold the judgment of the Circuit Court should be reversed and the cause remanded.