C. & A. R. R. Co. v. Harrington.

# Chicago & Alton R. R. Co. v. John Harrington.

1. EVIDENCE—*Preponderance Not Always with the Greater Number of Witnesses.*—Mere numerical strength of evidence is not necessarily sufficient to require a verdict to be set aside when against it.

2. QUESTIONS OF FACT—*Servants in Dangerous Places.*—The questions as to whether a servant of a railroad company knowingly places himself in a dangerous position, is for the determination of the jury upon the evidence in the case.

3. ORDINARY CARE—*Switchmen Riding in Dangerous Places.*—If switchmen ordinarily and customarily ride in dangerous places when there is no necessity for doing so, the consequences are the result of their own fault. The doing of a dangerous and needless act, by any number of persons, any number of times, does not make the act right.

4. DAMAGES—*Medical Services in Personal Injury Cases.*—When expenses for medical services have been incurred by an injured party, so that he is liable therefor, he is entitled to recover for them, though they have not been paid, or have been voluntarily paid by another.

5. PRACTICE—*Calling a Witness out of the Regular Course.*—After a party has closed his case, allowing him to re-open it and call another witness, is a matter resting in the sound discretion of the court and can not be assigned for error, unless the adverse party has suffered some special injury in consequence thereof.

6. NEGLIGENCE—*Instructions Stating What is Not, is Erroneous.*—An instruction which substantially tells the jury that riding on the footboard of a car was not negligence, takes from them a very important question which it was .the province of the jury to determine, and is material error which the other instructions given in this case did not cure.

Trespass on the Case, for personal injuries. Trial in the City Court of East St. Louis; the Hon. BENJAMIN H. CANBY, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the February term, 1898. Reversed and remanded. Opinion filed August 31, 1898.

## STATEMENT.

The East St. Louis freight yard of the Toledo, St. Louis & Kansas City Railroad (commonly called the Clover Leaf) is what is called a stub yard, and the only way of getting into and from the yard with cars, is from the east end of it. No passenger or freight trains run through it, but a main or lead track runs from the east end of the yard to the freight house at the west end.

From this main or lead track, a number of stub switch-tracks branch off westerly on which are received freight cars, coming from other roads, at all hours of the day and night. The switch tracks are connected with the lead track by thrown switches, which are not kept locked.

On the night of January 27, 1897, the servants of appellant transferred a number of cars of perishable freight from appellant's road to a switch track of the Clover Leaf road, and in doing so omitted to place them a sufficient distance down the switch track to allow a locomotive and cars to pass along the lead track, without coming in contact with the last car so placed on the switch track, and also omitted to close the switch, but left it open.

A short time after the switch crew and locomotive from appellant's road had left the Clover Leaf yard, a locomotive and switching crew of the Clover Leaf road came down the lead track, the locomotive pushing two freight cars (which was the usual way of switching) to be placed on a switch track. The weather was cold, the wind was blowing hard, it was snowing and dark. Two of the switching crew were on the top of the cars, one at the forward end of the front car, the other at the rear end of the rear car, while appellee, who was one of the switching crew, was on the foot-board of the locomotive.

When the cars that were being pushed reached the switch-track on which appellant's servants had left the cars they had placed on it, the cars that were being pushed ran in on the switch track and collided with the cars there, and in consequence the locomotive on which appellee was riding and the rear car next to it, came together, breaking appellee's legs, tearing off a finger, and otherwise severely injuring him. For the alleged negligence of appellant's servants in leaving the cars on the switch track as they did, and in neglecting to close the switch, appellee brought this suit, and recovered a judgment for $11,000 damages, from which the railroad company appealed.

WISE & McNULTY, attorneys for appellant.

M. MILLARD and F. C. SMITH, attorneys for appellee.

MR. JUSTICE BIGELOW delivered the opinion of the court.

Twenty errors are assigned, the most of which, however, need not be specifically noticed, because embraced in those to which attention has been called in appellant's brief.

The first point made is, that the weight of the evidence clearly establishes that it is not the custom of railroad employes, in switching cars in the Clover Leaf yards, to close the switches after them, but that this duty devolves upon those who follow them in the business of switching. Fourteen witnesses were sworn on behalf of the plaintiff, the majority of whom testified that the custom was for the parties last using the switch track, to close the switch before leaving it, so as to leave the lead line in safe condition for passage.

Twenty-two witnesses were sworn on behalf of the defendant, the majority of whom testified contrary to what plaintiff's witnesses had testified on that point.

The rule is too well settled to need the citation of authorities for its support, that mere numerical strength of evidence is not necessarily sufficient to require a verdict to be set aside when against it.

The second reason urged by appellant's counsel for a reversal of the judgment is stated as follows: "The plaintiff, in riding on the foot board of the engine, between the engine and a box car, when shoving in cars, placed himself in a dangerous position, and on the night he was injured, doubly so, because dark and windy, and a blinding snow blowing, so that the switchman on the head car couldn't see. Under the circumstances, plaintiff's placing himself where he was useless, where he could not see ahead, where in case of an accident he could not protect himself, and where he would inevitably be injured, was such contributory negligence on his part as prevents any recovery in this suit."

It must be admitted that plaintiff was in a dangerous position, and had he been a passenger or anything but a

switchman, the authorities cited by counsel in support of the position contended for, would have been more in point. It would have been much more satisfactory to us, if counsel had indicated where, under the circumstances, plaintiff could have placed himself so as to have been more " useful."

Already a switchman was on the top of each freight car to give warning to the engineer of danger ahead, but neither could see the obstruction made by the car on the switch track, or that the switch was open, and had plaintiff been on top of one of the freight cars, there is no reason for supposing that he could have seen what those already there could not see. In switching cars, there is no absolutely safe place where a switchman can be and properly perform his duties, and under the circumstances it may not have been unreasonable that plaintiff should have remained on the foot board ready to uncouple the locomotive from the cars, when they were placed on the switch track. Whether it was or not, was a question for the jury under proper instructions by the court.

The following question was propounded to plaintiff's witness, Neff, and the same question was, in substance, repeated to other witnesses of plaintiff : " In the operation or working of your business in your yards, where an engine was pushing a train of two cars or a small number of cars, for a short distance, say one hundred and fifty to three hundred yards, where would the switchmen ordinarily and customarily ride ? "

The court, against objection of defendant, allowed the witness to answer it and defendant excepted. This was error. If switchmen ordinarily and customarily ride in a dangerous place when there is no necessity for doing so, the consequences are the result of their own fault, and the doing of a dangerous and needless act, by any number of persons, any number of times, can not make the act right. C., R. I. & P. R. R. Co. v. Clark, 108 Ill. 118; C. & A. R. R. Co. v. Bragonier, 119 Ill. 51. Opinions may be given concerning the running and management of locomotives and trains by persons skilled in the business. 7 Am. &

C. &. A. R. R. Co. v. Harrington.

Eng. Ency. Law, 509; note 1. Such persons may be asked, upon an assumed state of facts, if the switchmen were in their proper places, (C. & Z. R. R. Co. v. Smith, 22 O. State. 227,) but this is far different from asking what switchmen ordinarily do.

Dr. McGaffigan was permitted, against the objection of appellant, to testify that the value of his services rendered plaintiff was $200 or $300, and it is insisted by counsel for appellant that this was error, for the reason there is no evidence that plaintiff had paid for the services. Sutherland on Damages, Vol. 3, page 721, says: " Where such expenses have been incurred by the injured party, so that he is liable therefor, he is entitled to recover for them, though they have not been paid, or though they have been voluntarily paid by another."

It was not error to admit the evidence. Klein v. Thompson, 19 O. St. 569; Gries v. Zeck, 24 O. St. 329.

After the defendant had introduced a portion of its testimony, and after a noon recess of the court, plaintiff was allowed against defendant's objection to call a witness, and examine him, and this is claimed to be error. The most that can be said of such a practice is, that it is irregular. Had the court refused to allow the witness to be examined it would not have been error, unless the plaintiff had given good reasons for not calling him before closing his evidence in chief. The matter of allowing the witness to testify rested in the sound discretion of the court. If this were not so, it would frequently happen that a suitor would be injured without any fault of his own, when an important witness, after having been subpœnaed and been in attendance, was suddenly taken sick after the trial had begun. It was not error to allow the witness to be called and testify, unless defendant suffered some special injury in consequence of it, and nothing of the kind is claimed.

It is also claimed that the court erred in permitting plaintiff's counsel to ask a witness for the defendant where the engineer's seat on the engine was, with reference to the top of the box car, the objection urged being, because it

was not proper cross-examination; but the abstract does not state the reason, and besides, plaintiff made the witness a witness in his own behalf, which obviated the error, if any had otherwise existed.

Plaintiff's instruction No. 2 is challenged and is as follows: "If the jury believe, from the evidence, that the injury complained of in this case was solely caused by the switch being left open, and that plaintiff was in no way connected with the act of leaving it open, or the failure to close it, and that said switch was opened and left open by the servants of the defendant, then the fact that he was riding on the foot board of the engine at the time he was injured will not alone prevent a recovery, provided plaintiff exercised ordinary care for his own safety, and the defendant was guilty of the negligence charged in the declaration."

One of the two points in the case strongly contested was, that the act of riding on the foot-board was such negligence as would disentitle plaintiff of any right to recover. Under such circumstances it was of the utmost importance that the jury should have been accurately instructed.

The instruction substantially told the jury that the act of riding on the foot-board was not negligence, and hence took from them a very important question which it was the province of the jury to determine from the evidence. The giving of the instruction was material error, which the other instructions given in the case did not cure.

What has already been stated as to plaintiff's second instruction will apply to his fourth instruction, to which exception is also taken.

Appellant's counsel having declined to furnish any reasons why the court erred in refusing to submit to the jury eight of the nine special interrogatories asked, we conclude they are satisfied the sixth interrogatory given, and which the jury answered, covered everything contained in the entire series, proper to be submitted to them, and we are of the same opinion.

The only remaining assignment of error is that the damages assessed by the jury are excessive.

It must be conceded that they are much larger than are generally given by juries in this class of cases, but as the case must go to another jury it is unnecessary to pass upon the question, and therefore we express no opinion upon it.

For the errors indicated the judgment is reversed and the cause remanded.