## Illinois Central Railroad Co. v. Arthur Barslow.

1. RAILROADS—*Duty to Employes in Furnishing Appliances.*—A railroad company is obligated by its duty to employes to exercise reasonable care in the furnishing to them of appliances for their use; and this rule applies as well to cars and appliances not owned by it but received from connecting lines.

2. SAME—*Duty of Inspecting Cars Coming into its Possession from Connecting Lines.*—It is the duty of a railroad company to provide some method of inspection of cars and their appliances coming into its possession from connecting lines.

3. SAME—*Not Liable for Injuries to an Employe Caused by His Failure to do His Duty in Inspecting Appliances.*—When it is made the duty of an employe to examine the couplings, wheels, journals, etc., and brakes of cars in his train, and he fails to perform that duty, he can not by his failure impose a liability upon his employer for injuries to himself.

4. SAME—*When Notice of Defective Appliances Must Be Shown.*—Where the evidence of notice relied upon to charge a railroad company with negligence in failing to inspect cars received from a connecting line, is the uncertain identity of an unknown car-repairer, a verdict of guilty can not be sustained.

5. SAME—*Negligence of Connecting Lines.*—The duty of a railroad company to inspect cars coming from a connecting line is to be measured by what it ought to have done while the cars were in its possession and not before. The negligence of the connecting line before the delivery of the cars can not be imputed to it.

6. MASTER AND SERVANT—*Comparative Duties of Inspection of Appliances.*—Where the duty to inspect appliances is delegated by the master to the servant as a part of his service, his duty is greater by reason of such delegation than the duty resting upon him as a matter of care for his own personal safety.

. Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. SAMUEL C. STOUGH, Judge, presid-

ing.  Heard in this court at the October term, 1900.  Reversed and remanded.  Opinion filed March 25, 1901.

Statement.—This suit was brought by appellee to recover damages for personal injuries sustained, as is alleged, through negligence of appellant, his employer, in furnishing him a defective appliance in his work, viz., a coupling link which was cracked.

Appellee was employed by appellant as brakeman, and had been so employed for eight or nine months previous to the injury.  The train crew consisted of a conductor, and Thomas Clancy and appellee, brakemen.  Sometimes appellee was rear brakeman and Clancy head brakeman, and sometimes the reverse.  On the day mentioned appellee worked as rear brakeman.  The work of this crew, together with the enginemen, consisted in hauling cars loaded with sand from Sixty-seventh street in this city to Hawthorne, ten miles from Sixty-seventh street, and in bringing back the empty cars after they were unloaded at Hawthorne.  The Baltimore and Ohio Railroad Company brought the loaded cars of sand from Whiting, Indiana, a place fifteen or twenty miles from Sixty-seventh street, and delivered them to the appellant company at Sixty-seventh street, and the cars, after being taken to Hawthorne by the way of Sixteenth street and the St. Charles Air Line and unloaded, were returned empty to the B. & O. R. R. Co. at its connecting point with appellant, viz., Sixty-seventh street. The customary train handled by the train crew to which appellee belonged consisted of fifteen loaded cars.  When appellant's train crew took these cars at Sixty-seventh street the train was already made up, and all that the crew had to do was to uncouple and pull out from the side-track at Sixty-seventh street their fifteen cars and attach thereto a caboose.  The amount of sand handled was evidently great, as sometimes there would be fifty to one hundred cars of sand at Sixty-seventh street at a time.  The B. & O. would bring that number in and they would stand on the side-track there until the crew to which Barslow belonged was ready for them.  On the day in question the crew to

which appellee belonged had taken fifteen carloads of sand to Hawthorne and were returning on the Air Line between 6:30 and 7 o'clock P. M., with fifteen empty cars and a caboose. It was a chilly night and there was a drizzling rain. After proceeding part way through the city of Chicago, the main line being blocked so they could not proceed, Clancy, the head brakeman, cut the train for the Indiana avenue crossing, leaving four sand cars and the caboose west of the street crossing, the balance of said train being east thereof. Appellee was in the caboose at the time this was done. He went out to see if he could get a signal, and got one from the head brakeman to couple up. Appellee had a lantern in his hand, and as the train east of the crossing backed up he stepped in to make the coupling. The coupling link, which he raised with his hand to make the coupling with, had a large crack in it, large enough to catch his glove. His glove was caught in this crack and he tried to get it out, but it was too late, and his hand was crushed. As a result of the injuries to appellee's left hand, his thumb and middle finger had to be amputated, and the other fingers were so injured that he has to some extent lost the use of them all, excepting the little finger. Appellee took notice of the link in which his hand was caught at the very time his hand was being taken out. One or two days after the night of the injury he went out to see the crew at Sixty-seventh street, and the conductor, Hart, then gave him the number of the car in which the link was, and also gave him the link.

Upon a former trial of this case, the link was used; and, if not formally introduced in evidence, was treated as being in evidence. A judgment was rendered upon the verdict of the jury finding appellant guilty of negligence. This court, upon an appeal taken from the judgment of the trial court, reversed that judgment upon the ground that the evidence did not sustain the verdict. The court then held, upon a review of the evidence, that there was no evidence showing that the appellant company had notice of the defect which caused the injury. Ill. Central R. R. Co. v. Barslow, 55 Ill. App. 203.

Upon a second trial one Dreyden was called as a witness for appellee, and he testified that upon the day previous to the day of the injury, he had happened to go to the appellant's tracks at Sixty-seventh street to see appellee, and that he had then noticed the defective link in the coupling to car number 73736 or 73737, and that he had then called the attention of Clancy, appellee's fellow-brakeman, to the defect, and also had notified a car-repairer, who was there, and that the car-repairer had said, "Oh, I saw that, that is all right." Clancy corroborated this witness, and testified that the car-repairer was a car-repairer of the appellant company. Witnesses for appellant testified that they had no inspector or repairers at Sixty-seventh street.

The jury found a verdict for appellee and assessed his damages at $3,000. From judgment upon that verdict this appeal is prosecuted.

W. A. HOWETT, attorney for appellant; J. G. DRENNAN, of counsel.

MUNSON T. CASE and W. S. JOHNSON, attorneys for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

The questions of controlling importance presented by this record are, first, as to the sufficiency of the evidence to establish negligence of appellant, and, second, the sufficiency of the evidence to show that appellee was in the exercise of due care.

There is no doubt but a railway company is obligated by its duty to employes to exercise reasonable care in the furnishing to them of appliances for their use, and that this rule applies as well to cars and appliances which are not owned by the company, but are received by it from connecting lines. The appliance here in question, a defective link, was upon a car of another company, which had been received by appellant and was being used by it. Therefore, as applied to this coupling link, the appellant owed to its employes the duty of an exercise of ordinary

care. The question is whether the evidence here presented shows a lack of such care as the proximate cause of the injury, and whether, in relation to this defective link, the conduct of appellee himself is free from contributory negligence.

The evidence discloses that these cars were received by appellant from day to day, and there is no evidence as to the length of time during which the link in question had been in possession and control of appellant, except that a witness testified to having seen it attached to a car on the tracks at Sixty-seventh street the day before the accident. This witness is severely criticised by counsel for appellant. It is argued that it is improbable that he should now remember having seen, in 1891, a defective link, in which he had no interest whatever, and should also remember through the intervening years the number of the car to which the link was attached. It is also urged that had he been in fact a witness to the matters testified to, he would have been called as a witness upon the former trial.

But all of these matters, going solely to the truthfulness and credibility of the witness, are matters peculiarly within the province of the jury to determine. Evidence is given which, in some degree at least, accounts for the failure to call this witness upon the former trial. The probability or improbability of his having remembered what was at the time a matter of trivial consequence to himself, was for the jury to weigh and decide. Moreover, he was corroborated by Clancy.

In passing upon the effect of the evidence as sustaining the verdict, we must assume that the jury believed the testimony of this witness, and were warranted in so doing. We have, then, to inquire as to the effect of his testimony, corroborated by the testimony of Clancy, as showing negligence of appellant. The effect of this testimony, that the car was on the appellant's tracks on the day before the injury, and that the attention of a car-repairer was at that time called to the defective link, is to be considered in its bearing upon two distinct questions: First, was there

I. C. R. R. Co. v. Barslow.

a duty of inspection, in view of the time the car was in the appellant's possession, which was so neglected as to create a liability for negligence, and, secondly, was there a direct notice of the defect to appellant by reason of the notice to the car-repairer.

We are of opinion that there was a clear duty upon the part of appellant to provide some method ·of inspection of these cars and their appliances, as they came into its possession from the connecting line. The question, then, is, was that duty neglected? The appellant had rules in relation to the inspection and discovery of defects of cars thus received by it. They are, so far as disclosed by the evidence, as follows :

A printed rule, number 704, provides :

" Conductors and their men must be on hand before starting a sufficient length of time to check their trains, examine and receipt for sealed cars, and see that all couplings are properly made, the necessary signals out, and everything in readiness to start promptly on time."

Rule 706 provides :

" Conductors must examine couplings, wheels, journals and brakes of the cars in their trains, while on the road, as often as their other duties will permit, and particularly while trains are pulling in and out of sidings. They must use the utmost care to prevent the heating of journals. Any box showing a tendency to heat must receive immediate attention. They will require their trainmen to aid them in the examination of their trains," etc.

The custom and practice of the employes of appellant, under the foregoing published rules, is shown by the testimony of appellee. He testified as follows :

" Sometimes we would be at Sixty-seventh street an hour. My duties were no different from other brakemen. Just the same as any other brakeman on the road. Sometimes we would be an hour and a half at Sixty-seventh street. When the cars came in we coupled them ourselves onto the train. There was no other switch crew at Sixty-seventh street. We did all the coupling ourselves. It was my duty to see that all cars were coupled together .before we left Sixty-seventh street each morning; that was part of our duty. We always had to be there long enough each morn-

ing to see that the cars were properly coupled, and we had
to take time enough to couple them. The same duty was
imposed upon me each evening at Hawthorne, to see
that the cars were properly coupled before we left there.
This responsibility was equally as much upon me as upon
the other members of the crew. This applied to Sixty-
seventh street each morning, and Hawthorne each evening."
And, "When I went over my train in the morning, before
I started out, if there was anything wrong, it was my duty
to report it. If it was in such shape that we could handle
it we would pull it; if not, we would set it to one side. I
have set out cars at Twenty-seventh street; that is where
the car works were; the repair shops were there. That
is the only repair shops there were. Where cars were dis-
abled so we couldn't handle them, that is where we set
them out. If they were disabled so we couldn't pull them
there, we let them remain in the yard until there was some
way fixed for hauling them to the repair shops. If we
could get them to Twenty-seventh street, that is where we
took them."

It is clear that it was the usual and customary duty of
appellee to inspect the couplings on these cars used by him-
self and his fellow-trainmen. It would seem, therefore, to
be clearly established that the method of inspection pro-
vided by the appellant in relation to these cars, received
from its connecting lines each morning, imposed upon
appellee and his fellow-trainmen the duty of examining
couplings and reporting defects. By a failure to perform
that duty he can not impose a liability upon appellant for
injuries to himself. Ill. Central R. R. Co. v. Jewell, 46 Ill.
99; T. W. & W. R. R. Co. v. Eddy, 72 Ill. 138; C. & A. R.
R. Co. v. Bragonier, 119 Ill. 51.

In the Jewell case the negligence charged was in part
based upon a defective brake. In relation to this branch
of the case the Supreme Court said :

" We are not inclined to hold that this was such negli-
gence as to charge the company, for the condition of the
brake was a matter under the special care of the brakeman,
and it was his business at all times to see that it was in a
fit condition for use, and report defects to the company.
The company are not to suffer for his negligence of a plain
duty."

In the Bragonier case the charge of negligence related to a defective brake, by reason of which the plaintiff, a brakeman, was injured. The court said:

" But a worse feature of this instruction is, it implies, by its terms, that when a railroad company employs local inspectors of its cars at particular stations, it thereby relieves all brakemen from the duty to observe whether the brakes on the cars they may be using are in repair and fit for present use. If this is not its meaning, it can have no possible application to the facts of the case. That this is its evident meaning is clear from what follows, when it is said ·such brakeman ' has a right to expect that the cars with which he is to work are safe and suitable wherewith to work,' and that the inspection has been done with such care that he may enter upon the work of braking without making any examination for himself. The principle sought to be stated could not be regarded as law in any event, unless it had been added when the company had intrusted the exclusive work of inspecting its cars to other servants than brakemen. That, however, is not this case. The fact defendant may have employed and did employ car inspectors at certain stations, did not relieve brakemen from the duty to observe the rule in regard to inspecting that part of the machinery they are expected to handle. The duty in that respect is as imperative as if they were the sole inspectors."

It doubtless is the rule that the duty of inspection resting upon the employer is greater than the duty to inspect which rests upon the employe as a matter of care for his own safety. And in the case of employes, such as switchmen, who in performing their work must act quickly and without time to examine, the rule is especially applicable. But here it is not alone a question of the duty of appellee to inspect as a matter of care for his own safety, but a greater duty by reason of the fact that the task of inspection had been delegated to him by the employer as a part of his service. The distinction is clearly presented in C. & E. I. R. R. Co. v. Kneirim, 152 Ill. 458.

The duty of appellant to exercise reasonable care to furnish in the first instance appliances which are reasonably safe for use of its employes, is to be measured in its relation to these cars, received each morning from a connect-

ing line,·as a matter of inspection. Here, the very care
which the appellant undertook to exercise in order that
those cars might not be used while couplings were defect-
ive, was intrusted to appellee and his fellow-trainmen.
The appellant was obliged to intrust to some of its em-
ployes this task. It was intrusted to appellee, and if he
failed in performance, such failure can not be permitted
to create a liability to himself.

There remains to be considered the question of direct
notice to appellant. The testimony of Dreyden and Clancy
is to the effect that Dreyden called the attention of a car-
repairer (who was present at the tracks at Sixty-seventh
street) to the defect in the link, and Clancy testified that
this car-repairer was in the employ of the appellant. If it
appeared that specific notice of the defect had been brought
home to appellant, then the failure of appellee to notify
appellant of the defect might not operate to bar a recovery.
It would then be a question for the jury not only whether
a failure to repair in the time intervening after notice con-
stituted negligence, but as well whether the conduct of
appellee in failing to inspect and discover the defect was
contributory negligence. But the difficulty is that the evi-
dence is insufficient to establish such direct notice to appel-
lant. It does not appear who this man described as a "car-
repairer" was, or of what his duties consisted. It is not
fairly inferable from the evidence that he was charged
with the duty of inspecting and determining what consti-
tuted defects. It is just as consistent with the evidence, if
not more so, to conclude that he was a repairer who had
been sent there to do a special job, and whose duties ex-
tended no further.

Kempton, who was the engineer in charge of the train
and familiar with the surroundings at Sixty-seventh street,
testified :

"At that time there were no car inspectors at Sixty-seventh
street. I never saw a car inspector there. There were no
yards, buildings, repair shops or anything of that kind
there. If cars needed repairs they were left at Twenty-

seventh street, where were located the car shops of the Illinois Central."

Stripp, a clerk at the Burnside shops, who had knowledge of all the employes of the company, testified:

"I had full knowledge of where the inspectors of cars of the Illinois Central under my jurisdiction were located. At that time the Illinois Central had no inspectors at Sixty-seventh street, nor did they have any at Hawthorne."

Dair, car foreman, testified:

"On December 14, 1891, car inspectors of the Illinois Central were located at One Hundred and Fourth street, at Burnside, at Kensington and Riverdale. I never heard of any car inspectors being at Sixty-seventh street."

Aside from the testimony of appellee this positive evidence is uncontradicted except in so far as the testimony of Dreyden and Clancy shows that a man, called by them a car-repairer, was present at the tracks on the day before the injury. But their testimony is reconcilable with the testimony of Kempton, Stripp and Dair, if the man seen by Dreyden and Clancy was merely a workman sent by appellant to do some work at Sixty-seventh street, and was not an employe charged with the duty of inspecting and repairing defects generally.

Stripp testified further:

"The foreman sent men out to various portions of the road to repair cars. Possibly they may have sent men to Sixty-seventh street; I can't recollect."

That the man seen by Dreyden and Clancy, and to whom the former gave notice of the defect, was one of their men thus sent out by a foreman, is the only fair conclusion to be drawn from all the evidence. There is no evidence to warrant the jury in concluding that this man was charged with any other duty to inspect or repair beyond the work which he may have been sent to do.

The appellee testified that inspectors were kept at the Sixty-seventh street yards, and that he thought that they were Illinois Central men. If he had testified positively that they were appellant's men, yet he would be uncorroborated and contradicted by the three witnesses for

appellant. In this state of the evidence it would be an unavoidable conclusion that the manifest weight of the evidence went to establish that appellee was mistaken in what he thought as to the employment of inspectors by appellant at the place in question.

In this uncertain condition of the evidence as to the identity of the unknown car repairer to whom the notice relied upon was given, we are unable to sustain a verdict which must have been based upon the supposition that the notice so given was effectual to charge the appellant.

There was evidence that the crack in the link was rusted, showing that it was an old crack; but we do not regard this evidence as of controlling importance. Whether the crack was a week old or a year old, it had only been in the possession of appellant for a day, so far as the evidence discloses, and the duty of appellant must be measured by what it ought to have done in that time, not before. The negligence of the connecting line before delivery of the cars to appellant can not be imputed to appellant.

So far as the question of contributory negligence of appellee is concerned, we are of opinion, as above indicated, that if notice of the defect were brought home to appellant, the question of negligence of appellant and contributory negligence of appellee would be matters proper for submission to a jury. Because the evidence is insufficient to show such notice, the judgment is reversed and the cause is remanded.